779 So.2d 633 (2001)
L.S., a child, Petitioner,
v.
DEPARTMENT OF JUVENILE JUSTICE, Respondent.
No. 1D01-415.
District Court of Appeal of Florida, First District.
March 8, 2001.
*634 Nancy Daniels, Public Defender, and John W. Hedrick, Assistant Public Defender, Tallahassee, for petitioner.
Robert A. Butterworth, Attorney General, and Karen M. Holland, Assistant Attorney General, Tallahassee, for respondent.
LEWIS, J.
L.S., a juvenile, filed a petition for writ of habeas corpus arguing that the Department of Juvenile Justice (DJJ) had lost jurisdiction over him. This court granted relief by an unpublished order and directed that L.S. be released from custody. We now write to explain our decision.
L.S. entered a plea to various offenses committed in March 1999. In a predisposition report filed with the trial court, DJJ recommended that L.S. be adjudicated delinquent, committed to a Level 6 program and, following his commitment, that he be placed in an aftercare program. At the April 5, 1999, disposition hearing, L.S. stated he had no objection to the recommendation. The original trial judge stated, "Then on the recommendation of the Department and of the child, I'll commit him to a Level 6 placement." Neither the oral pronouncement nor the written disposition included a provision for aftercare.
Following his release from Level 6 commitment, L.S. was placed in an aftercare program. DJJ later reported that L.S. had failed to comply with his Conditional Release Program and recommended to the court that he be transferred to a Moderate Risk Restrictiveness Program. L.S. challenged the transfer contending that he should be released because after care was not ordered by the court in its original disposition order. A successor trial judge approved the transfer concluding that the omission of aftercare in the original order was a clerical error which could be corrected after the fact.
L.S. filed a petition for writ of habeas corpus in this court arguing that DJJ no longer had jurisdiction over him relying on K.G. v. State, 759 So.2d 752 (Fla. 4th DCA 2000). In K.G., the disposition order provided that following furlough from a Level 4 program, K.G. should be placed on community control. At a later time, DJJ administratively transferred K.G. to a more restrictive Level 8 program. After K.G. attended the Level 8 program, DJJ placed K.G. on aftercare. Based on violations, the court revoked K.G.'s aftercare and committed her to a Level 8 program. The Fourth DCA reversed that order noting the absence of a court order requiring K.G. to participate in aftercare upon completion of her commitment program. The court stated that the record failed to show that K.G. was properly transferred by DJJ to the aftercare program upon furlough from the Level 8 program.
L.S. argued that the failure to order aftercare at his disposition hearing was not a clerical error which could be corrected by a later order. He asserted that because of due process concerns, special conditions of probation must be orally pronounced. State v. Williams, 712 So.2d 762 (Fla.1998). While clerical errors may be corrected by the court, Florida Rule of Juvenile Procedure 8.135 did not authorize entry of orders not previously made. Nunc pro tunc orders are issued to correct clerical mistakes or refer to judicial acts which memorialize a previously taken judicial act. They cannot be used to exceed the scope of the proper purpose for which a nunc pro tunc order can be issued. D.M. v. State, 580 So.2d 634 (Fla. 1st DCA 1991).
DJJ responded in opposition to the petition for writ of habeas corpus arguing that L.S. had sufficient notice that aftercare was a part of his Level 6 commitment and that his affirmative statement that he did not object to DJJ's recommendation acted as a waiver of any future objections. DJJ asserted that there was a valid order of *635 aftercare at the disposition hearing based upon DJJ's written predisposition report reflecting Level 6 commitment followed by aftercare, the trial court's acceptance of the recommendation, the sentencing of L.S. accordingly and L.S. affirmatively stating that he did not object to the recommendation.
DJJ also argued that L.S. was on temporary release and was still in "commitment status" while in aftercare pursuant to section 985.404(4), Florida Statutes (1998). That statute provides that DJJ may transfer a child, when necessary to appropriately administer the child's commitment, from one facility or program to another facility or program. DJJ argued that K.G. was distinguishable because the original disposition order in that case imposed a Level 4 commitment followed by post-commitment community control, not aftercare, and K.G. was not properly transferred to aftercare. Here, DJJ asserted that L.S. was properly transferred to aftercare because DJJ provided written notice to the court prior to L.S.'s placement into aftercare.
L.S. disputed DJJ's claim that he was properly transferred to aftercare. DJJ did not use its standard "Pre Release Notification and Acknowledgment Form" to effect the temporary release to aftercare, but instead attempted to rely on a document labeled "Performance Summary." That document made no mention of section 985.404(4), nor did it mention "transfer," "temporary release," nor any intention to place the child in aftercare. L.S. argued that there was no showing that he was validly transferred to aftercare as required by K.G.
In ordering the release of L.S., we concluded that aftercare was not validly ordered at the original predisposition hearing. The written disposition order did not specify aftercare, nor did the trial judge orally pronounce that condition. This omission is not a clerical error which can be corrected by an order nunc pro tunc.
In addition, the record failed to show that L.S. was properly transferred to the aftercare program from his Level 6 commitment. There was nothing in the "Performance Summary" that would have alerted the trial court to examine it to determine if DJJ intended to move the child. To the contrary, DJJ acknowledged that it did not follow its own procedures by sending the standard notice that would presumably alert the trial judge. DJJ did not use its standard "Pre Release Notification and Acknowledgment Form" to validly effect a temporary release to aftercare. The only letter/form notice sent to the trial judge was after the fact when DJJ wanted to return the child to Level 6 commitment. The authority of DJJ was never properly invoked to transfer L.S. to aftercare.
We caution the trial courts of the need for care in pronouncing juvenile commitments. The record from the disposition hearing contained no discussion of aftercare, nor did the commitment order mention aftercare. Commitment to after-care following Level 6 commitment is more than just a clerical matter.
PETITION GRANTED.
BARFIELD, C.J., and ERVIN J., concur.