882 So.2d 990 (2004)
N.C., a child, Petitioner,
v.
Perry ANDERSON, etc., Respondent.
No. SC03-523.
Supreme Court of Florida.
September 2, 2004.
*991 Alan H. Schreiber, Public Defender and Debra A. Bookout, Assistant Public Defender, Seventeenth Judicial Circuit, Fort Lauderdale, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General, Celia Terenzio, Bureau Chief, and Donna M. Hoffmann, Assistant Attorney General, West Palm Beach, FL, for Respondent.
PER CURIAM.
We have for review the decision in N.C. v. Anderson, 837 So.2d 425 (Fla. 4th DCA 2002), which certified conflict with the decisions in A.L. v. State, 790 So.2d 1149 (Fla. 2d DCA 2001); S.D.W. v. State, 746 So.2d 1232 (Fla. 1st DCA 1999); C.A. v. State, 685 So.2d 1036 (Fla. 3d DCA 1997); T.A.R. v. State, 640 So.2d 222 (Fla. 5th DCA 1994); and L.M. v. State, 610 So.2d 1314 (Fla. 1st DCA 1992). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons expressed below, we approve the Fourth District's decision in N.C. that while a juvenile is entitled to a written order of disposition containing all of the terms of disposition, there is no entitlement to an oral pronouncement containing all of the terms.

*992 FACTUAL AND PROCEDURAL BACKGROUND
As a result of a misdemeanor battery adjudication, N.C. violated her probation and went before the juvenile court for disposition. N.C., 837 So.2d at 426. At the disposition hearing, the court orally committed N.C. to a level six residential treatment program. In addition, although not stated orally at the hearing, the court's written disposition order issued on the same day required that N.C. be placed upon conditional release following her completion of the treatment program. See id. Subsequently, N.C.'s attorney filed a motion to correct the disposition on the grounds that her adjudication did not qualify for level six treatment. See id. The trial court granted the motion and entered a new disposition order imposing level four treatment. See id. The new order also required post-commitment conditional release/aftercare. See id.[1]
When N.C. completed the commitment program, she filed a motion to terminate aftercare on the ground that it was not legally binding because the trial court had not orally pronounced the inclusion of aftercare or conditional release at the original disposition hearing. See 837 So.2d at 426-27. N.C. relied on the First District Court of Appeal's decision in L.S. v. Department of Juvenile Justice, 779 So.2d 633, 635 (Fla. 1st DCA 2001), and argued that a written disposition order could only include terms orally pronounced at the disposition hearing. See N.C., 837 So.2d at 427. The trial court denied the motion to terminate.
On review of the denial of the motion to terminate, the Fourth District affirmed the trial court's denial and distinguished N.C. from L.S. on the grounds that in L.S., aftercare had not been provided for in either a written disposition or an oral pronouncement. See id. The Fourth District concluded that N.C. was not entitled to an oral pronouncement of disposition under the provisions of Florida Rule of Juvenile Procedure 8.115(c), and the court held that the written disposition provided for in the juvenile rules was sufficient to comply with constitutional due process concerns.
In addition, the court concluded that N.C.'s due process rights to be fully informed of the terms of disposition in time to object were adequately protected by Florida Rule of Juvenile Procedure 8.135(b), which provides that a juvenile may file a motion to correct an illegal or erroneous disposition or commitment order. See id. The district court also observed that N.C. had not satisfied the time provisions under rule 8.135 for objecting, so even if the inconsistency in the oral pronouncement and the written order did constitute error remediable under rule 8.135, she would have been precluded from relief on procedural grounds. See id. The district court denied N.C.'s motion for rehearing, but proceeded to certify conflict with several decisions from the other district courts involving similar or related issues. See id. at 428.[2]

*993 ANALYSIS
N.C. raises two issues for this Court's consideration: (1) whether constitutional due process concerns require that an oral pronouncement of disposition be issued at the disposition hearing, and (2) whether Florida Rule of Juvenile Procedure 8.135, which provides for a motion to correct an illegal or erroneous disposition, provides adequate due process protection. We conclude that due process does not require that the trial court issue an oral pronouncement of disposition at a minor's disposition hearing, and that rule 8.135 provides an adequate safeguard for minors who wish to challenge their written dispositions.

Oral Pronouncement of Sentence
At the outset, N.C. contends that in juvenile delinquency cases the state and federal constitutional guarantees of due process of law require that trial courts issue oral pronouncements of dispositions that include all of the terms of disposition. N.C. acknowledges that the juvenile rules provide only for a written disposition order. However, she contends that juveniles should be afforded the same right to an oral pronouncement that adults enjoy. See Justice v. State, 674 So.2d 123, 125 (Fla.1996) (acknowledging that Florida Rule of Criminal Procedure 3.700(b) "mandates that the sentence or other final disposition `shall be pronounced in open court.'")
The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty or property, without due process of law." This same protection is provided in the Florida Constitution. See Art. I, § 9, Fla. Const. "Procedural due process serves as a vehicle to ensure fair treatment through the proper administration of justice where substantive rights are at issue." Department of Law Enforcement v. Real Property, 588 So.2d 957, 960 (Fla.1991). Procedural due process requires both reasonable notice and a meaningful opportunity to be heard. See id. The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (citations omitted).
At issue in this case is whether N.C. received procedural due process, that is, whether the proper procedures contained in the juvenile rules, which do not include a requirement of an oral pronouncement, are sufficient to satisfy due process concerns. Although a minor has a due process right to some form of notice of disposition, we conclude that minors have no constitutional right to an oral pronouncement of disposition, where there is an adequate procedure in place for the issuance of written dispositions and for objections to those dispositions.
We acknowledge that in adult sentencing proceedings, oral pronouncement of sentence is required. However, the applicable rule, Florida Rule of Criminal Procedure 3.700, expressly mandates oral pronouncement. While this might reflect a discrepancy between the juvenile courts *994 and the adult courts, we believe it is explained by the unique nature of the juvenile courts, which are neither entirely civil nor criminal, and by the unique nature of the status of juveniles themselves.
Such a conclusion is consistent with the analysis by the U.S. Supreme Court's statement in Schall v. Martin, 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984):
There is no doubt that the Due Process Clause is applicable in juvenile proceedings. "The problem," we have stressed, "is to ascertain the precise impact of the due process requirement upon such proceedings." In re Gault, 387 U.S. 1, 13-14, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). We have held that certain basic constitutional protections enjoyed by adults accused of crimes also apply to juveniles. See id., at 31-57, 87 S.Ct. 1428 (notice of charges, right to counsel, privilege against self-incrimination, right to confrontation and cross-examination); In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (proof beyond a reasonable doubt); Breed v. Jones, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) (double jeopardy). But the Constitution does not mandate elimination of all differences in the treatment of juveniles. See, e.g., McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (no right to jury trial). The State has "a parens patriae interest in preserving and promoting the welfare of the child," Santosky v. Kramer, 455 U.S. 745, 766, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), which makes a juvenile proceeding fundamentally different from an adult criminal trial. We have tried, therefore, to strike a balance  to respect the "informality" and "flexibility" that characterize juvenile proceedings, In re Winship, supra, at 366, 90 S.Ct. 1068, and yet to ensure that such proceedings comport with the "fundamental fairness" demanded by the Due Process Clause. Breed v. Jones, supra, at 531, 95 S.Ct. 1779; McKeiver, supra, at 543, 91 S.Ct. 1976 (plurality opinion).
Schall v. Martin, 467 U.S. 253, 263, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984). The informality and flexibility that the U.S. Supreme Court refers to support our conclusion that oral pronouncements of disposition are not mandatory so long as adequate provisions are made for both notice of the juvenile sanctions and a meaningful opportunity to object. It appears that each state is well within its rights to determine just how a minor should receive notice of a disposition, be it oral, written, or both, so long as due process concerns are adequately addressed.[3]
In Florida, the rule that governs disposition hearings, Florida Rule of Juvenile Procedure 8.115, requires that the trial court issue a written disposition. Florida Rule of Juvenile Procedure 8.115(c) provides:
(c) Disposition Order. The disposition order shall be prepared and distributed by the clerk of the court. Copies shall be provided to the child, defense attorney, state attorney, and department representative. Each case requires a separate disposition order. The order shall:

*995 (1) state the name and age of the child;
(2) state the disposition of each count, specifying the charge title, degree of offense, and maximum penalty defined by statute;
(3) state general and specific conditions or sanctions;
(4) make all findings of fact required by law;
(5) state the date and time when issued and the county and court where issued; and
(6) be signed by the court with the title of office.
In N.C.'s case, a copy of the written disposition was provided to N.C. and the other relevant parties. This disposition and its contents provided sufficient notice of the court's findings and the court's action. Furthermore, N.C. was provided an opportunity to challenge the disposition order under Florida Rule of Juvenile Procedure 8.135. Therefore, we conclude that due process was adequately satisfied through the issuance of a written disposition subject to a subsequent challenge in the same court.

Rule 8.135
Florida Rule of Juvenile Procedure 8.135, entitled "Correction or Disposition or Commitment Orders," provides for the correction of an illegal or erroneous disposition.[4] N.C. contends that rule 8.135 does not provide adequate due process protection.
In addition to the provision for a written disposition order, we conclude this opportunity to object to any provision of a disposition order is sufficient to satisfy due process concerns. See Fla. R. Juv. P. 8.115. The rule sets out guidelines and time frames for the assertion and resolution of claims of illegal or erroneous dispositions. The rule states that unless the issues raised in the motion can be resolved as a matter of law without a hearing, the court shall provide proper notice to all parties and hold an initial hearing no later than ten days from the filing to determine whether an evidentiary hearing is needed; the rule then provides that if an evidentiary hearing is needed, it shall be set no more than ten days from the date of the initial hearing. In this case, N.C. has not demonstrated that the procedures set forth in rule 8.135 were inadequate or deprived her of a fair and meaningful opportunity to be heard.[5] Therefore, we conclude that rule 8.135 provides sufficient due process protections.[6]

*996 CONCLUSION
For the foregoing reasons, we hold that due process does not require that a trial court issue an oral pronouncement of disposition and that N.C.'s due process rights were adequately protected by the requirement in the juvenile rules of a written disposition subject to a subsequent challenge by motion in the trial court.
We therefore approve the outcome of the Fourth District's decision in N.C., and disapprove the certified conflict decisions: A.L., S.D.W., C.A., T.A.R. and L.M., to the extent that they are inconsistent with this opinion.
It is so ordered.
PARIENTE, C.J., with WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
PARIENTE, C.J., concurs with an opinion, in which ANSTEAD and QUINCE, JJ., concur.
PARIENTE, C.J., concurring.
I agree with the majority's holding that a juvenile is not entitled to an oral pronouncement of all the terms of a disposition. I write to point out that the facts in this case indicate a problem that is outside the scope of the discrete appellate issue before us, but which nevertheless deserves attention  the lack of adequate gender-specific programs and services for juvenile delinquent girls.
The transcript of the first hearing in this case reveals that the trial court originally placed N.C. in a Level 6 commitment program only because the available Level 4 program would not have addressed N.C.'s multiple needs, which included treatment for sexual abuse and depression. When asked by the trial court whether all available options had been explored and whether anything was available other than a Level 6 program, the Department of Juvenile Justice (DJJ) representative explained that probation was not appropriate because of N.C.'s depression and negative behavior at home. N.C.'s grandmother echoed the DJJ representative's assessment that N.C. needed more help than she could receive at home. Although N.C.'s counsel argued that N.C. did not meet the minimal criteria for commitment and that N.C.'s "mental health needs [did not] translate into criminality to the level of a commitment program," the trial court reluctantly committed her to a Level 6 commitment program.
Six months later, N.C., who was one month from completion of the Level 6 program, filed (through her attorney) a motion to correct disposition in the trial court. N.C. argued that the Level 6 commitment was unauthorized because her sole delinquent act was a misdemeanor battery. The State's response was that N.C. was getting "the service she needs at this Level 6 for her mental health condition." However, the State agreed that N.C. did not, in fact, meet the criteria for Level 6 placement. The DJJ representative explained that N.C. would not get the necessary services within a Level 4 program, that she was "doing perfectly fine" in the Level 6 program, and was "getting the help that she needs." The trial judge was clearly frustrated, acknowledging that although the higher level commitment was in N.C.'s best interests, he lacked the authority to keep her in the Level 6 program. The trial judge stated: "I have to do what I have to do. I mean regardless of the fact that it's helping her." (Emphasis supplied.)
In a recent study on the juvenile justice system in Florida, the National Council on Crime and Delinquency (NCCD) concluded that there is "no effective system that matches the control and supervision needs *997 of the youth with the residential programs that are funded." Barry Krisberg & Vanessa Patino, National Council on Crime and Delinquency, Juvenile Justice in Florida. What Kind of Future? 3 (2004). According to the report's authors, more youth are being placed into commitment programs at a time when the overall juvenile crime rates have been declining and that "many of these youth can be better served by intensive home-based services, and shorter institutional stays, followed by very high quality reentry services." Id. at 8.
The NCCD report echoes what DJJ's own statistics show  that "crime by young women increased by 30% statewide" between 1993 and 1998. Id. at 40. There is also evidence that girls are more likely to be detained for less serious offenses, See id. (specifically finding that "girls in Duval County were increasingly likely to be detained for minor nonviolent offenses"); see also American Bar Association & National Bar Association, Justice by Gender: The Lack of Appropriate Prevention, Diversion and Treatment Alternatives for Girls in the Justice System 17 (2001) (noting that there "is evidence that girls are being detained for less serious offenses than boys"). Significantly, the NCCD report reflects that there are many successful programs to "combat risk factors and halt the surge of girls entering the juvenile justice system," id., but cautions that although the state is "blessed with the most outstanding service providers for girls in the nation," it is "imperative" to fully fund the blueprint. Id. at 42.
In this case, a young girl with a history of sexual abuse and depression acted out and committed a misdemeanor domestic battery. For reasons unexplained in the record, the services she needed were unavailable in a lower level program or through intensive in-home services, and the trial court was not authorized to place her in a higher level program. These facts demonstrate the limitations on what the judicial branch has the legal authority to accomplish. Thus, it is imperative that all three branches of government cooperate to ensure that our juvenile justice system can fulfill its mandate of providing rehabilitation to those children who are most at risk and most in need.
ANSTEAD and QUINCE, JJ., concur.
NOTES
[1] In 2000, Florida's Legislature amended section 985.231(1)(a)(1), Florida Statutes, and substituted the term "conditional release" for the term "aftercare." See ch.2000-135, § 31, Laws of Fla.
[2] The Fourth District certified conflict with: A.L. v. State, 790 So.2d 1149, 1150 (Fla. 2d DCA 2001) (holding that a written provision requiring that A.L. write a letter of apology to the victim be stricken from the written judgment because it was not included in the oral pronouncement); S.D.W. v. State, 746 So.2d 1232, 1234 (Fla. 1st DCA 1999) (holding that disposition order be remanded to the trial court for revision to conform to the trial court's oral pronouncement); C.A. v. State, 685 So.2d 1036, 1037 (Fla. 3d DCA 1997) (holding that oral pronouncement prevailed over the written order); T.A.R. v. State, 640 So.2d 222, 222 (Fla. 5th DCA 1994) (holding that "disposition order be vacated and the cause remanded for correction thereof"); and L.M. v. State, 610 So.2d 1314, 1317 (Fla. 1st DCA 1992) (stating that written disposition and oral pronouncement must conform to one other).
[3] Having reviewed the applicable rules of other states, we also have concluded that the trend appears to be toward written dispositions. The rules of a majority of states explicitly require a written disposition in either all or some circumstances, including sixteen states which, like Florida, require a written disposition in all circumstances. There are a number of states where the format in which the disposition should be rendered is ambiguous, and it is unclear whether oral pronouncements or written dispositions, or both, may be mandated in those jurisdictions.
[4] In relevant part, Florida Rule of Juvenile Procedure 8.135 states:

(a) Correction. A court at any time may correct an illegal disposition or commitment order imposed by it. However, a party may not file a motion to correct under this subdivision during the time allowed for the filing of a motion under subdivision (b)(1) or during the pendency of a direct appeal.
(b) Motion to Correct Disposition or Commitment Error. A motion to correct any disposition or commitment order error, including an illegal disposition or commitment, may be filed as allowed by this subdivision. The motion must identify the error with specificity and provide a proposed correction. A response to the motion may be filed within 15 days either admitting or contesting the alleged error. Motions may be filed by the state under this subdivision only if the correction of the error would benefit the child or to correct a scrivener's error.
[5] In fact, N.C. successfully availed herself of the protections of rule 8.135 when she challenged the initial Level 6 commitment she received in the first disposition order.
[6] We do agree with petitioner that as a matter of policy the better practice would be for all of the terms of disposition to be announced and discussed at the disposition hearing.