BENTON, J.
Z.M. appeals the final judgment terminating her parental rights as to her three children, K.H., K.H., and Z.H. She contends that the trial court erred by allowing the Department of Children and Family Services (DCFS) to terminate her parental rights on grounds it never pleaded; and that the trial court erred by concluding (if it did conclude) that DCFS presented clear and convincing evidence of the grounds that were pleaded, viz., that her continued involvement “in the parent-child relationship[s]” would jeopardize “the life, safety, well-being, or physical, mental, or emotional health of the childfren] irrespective of the provision of services.” § 39.806(l)(c), Fla. Stat. (2006). We reverse and remand for further proceedings.
I.
In its petition seeking termination of Z.M.’s parental rights, DCFS alleged that Z.M. abused or neglected her children by “engaging] in conduct toward the children ... that demonstrates that the continuing involvement of the mother in the parent-child relationship ... threatens the life or well-being of the children” within the meaning of section 39.806(l)(c), Florida Statutes (2006). DCFS asserted no other ground but did allege under this heading that Z.M. had not completed certain tasks assigned in a case plan. DCFS did not allege abuse, neglect or abandonment evi *1269 denced. by case plan noncompliance in violation of section 39.806(l)(e), Florida Statutes (2006),[1] as grounds for termination of Z.M.’s parental rights.
From opening statement on, DCFS litigated the case as it had pleaded it in its petition, urging as grounds for termination of Z.M.’s parental rights section 39.806(l)(c), Florida Statutes (2006), alone. Only after the close of DCFS’s case in chief and in response to Z.M.’s motion to dismiss did the trial judge suggest and DCFS’s counsel agree that section 39.806(l)(e), Florida Statutes (2006), seemed to support termination of Z.M.’s parental rights.[2] DCFS’s counsel answered a question from the trial judge by saying that section (l)(e) “seem[ed] [to be] more apt.” Even after the trial judge’s overture, however, DCFS expressly declined to seek amendment of the petition. In its final judgment the trial court ruled, nevertheless, that DCFS had established grounds for termination of Z.M.’s parental rights, not only (on the grounds actually pleaded) under section (l)(c), but also under section (l)(e).
This was error. DCFS never sought termination of Z.M.’s parental rights based on section 39.806(l)(e). By raising the argument for DCFS, then finding that DCFS had established a violation of section (l)(e), despite DCFS’s expressly declining to amend to assert section (l)(e), the trial judge overstepped the bounds of strict neutrality. See R.S. v. Dep’t of Children & Families, 872 So.2d 412, 413 (Fla. 4th DCA 2004) (trial court erred in basing termination of parental rights on a ground not alleged in the Department’s petition for termination of parental rights and not *1270 requested “under this ground during its opening statement or by amendment of the petition”). “Such is error because it is a denial of the procedural due process rights of notice and a fair hearing. See Wood v. State, 544 So.2d 1004, 1006 (Fla.1989).” Id.
The trial “court erred in relying on this ground because HRS had neither pled it nor added it by amendment.” In the Interest of A.D.J., 466 So.2d 1156, 1163 (Fla. 1st DCA 1985). See also J.C. v. Dep’t of Children & Families, 959 So.2d 431 (Fla. 4th DCA 2007) (citing R.S., 872 So.2d at 413) (trial court erred by terminating parental rights based on abandonment where this ground was not pleaded in the petition and DCF did not seek amendment of the petition to include this ground); K.S. v. Dep’t of Children & Families, 940 So.2d 577, 578 (Fla. 5th DCA 2006) (“[Generally, it is error to terminate parental rights on grounds not alleged in the petition.” (citing R.S., 872 So.2d at 413)).
II.
When a petition for termination of parental rights has given adequate notice of statutory grounds, and judgment terminating parental rights is entered on those grounds, we ordinarily simply review the trial court’s decision to terminate parental rights for competent and substantial evidence which a reasonable finder of fact could deem clear and convincing support for the necessary findings. The statute provides:
In a hearing on a petition for termination of parental rights, the court shall consider the elements required for termination. Each of these elements must be established by clear and convincing evidence before the petition is granted.
§ 39.809(1), Fla. Stat. (2006). See also N.L. v. Dep’t of Children & Family Servs., 843 So.2d 996, 999 (Fla. 1st DCA 2003) (“We are obliged to affirm the termination of parental rights if DCFS has met its burden to present clear and convincing evidence of a statutory ground for terminating parental rights, along with clear and convincing evidence that terminating parental rights is in the best interests of the child.”).
The present case is unusual in that the learned trial judge’s own words strongly suggest resort to an inappropriate eviden-tiary standard. Summing up the case, he observed that “if you looked at the Department’s case and viewed all the facts and inferences in their favor, I think there will be sufficient evidence from which you could argue that the termination grounds or at least one of them has been established.” (emphasis supplied). This language supports the inference that the trial judge relied on an incorrect evidentiary standard and, in applying this impermissi-bly lax standard, still concluded that DCFS had failed — or at least might have failed — to establish grounds for termination of parental rights under section (l)(c).
Although the order says nothing about any injury, under one view of the evidence Z.M.’s entanglement with DCFS can be traced to September of 2003 when K.H. suffered a fractured skull and a subdural hematoma. Z.M. testified that these injuries occurred when blows the children’s father intended for her struck K.H. instead. There was also uncontroverted evidence that Z.M. ended her relationship with the father more than two years ago when she obtained a domestic violence injunction; that she had not had any contact with the father since;[3] that she has worked through many of her domestic violence issues in therapy, which is still ongoing; and that she had explored in therapy and become well aware of the dangers of choosing any future domestic partner *1271 prone to violence. If credited, this evidence casts significant doubt on the conclusion that Z.M.’s continued involvement “in the parent-child relationship[s]” would threaten “the life, safety, well-being, or physical, mental, or emotional health of the childfren].” Neither the written order nor any statement by the judge on the record makes findings of fact on any of these matters.
In the absence of pertinent findings and in light of the apparent use of the wrong evidentiary standard,[4] we reverse and remand to the trial court with directions to make factual findings applying the correct evidentiary standard and to revisit the question whether DCFS has carried its burden under section (l)(c).
Reversed and remanded.
LEWIS and ROBERTS, JJ„ concur.

. This subsection provides that grounds for termination of parental rights are established if it is proven:
When a child has been adjudicated dependent, a case plan has been filed with the court, and:
The child continues to be abused, neglected, or abandoned by the parents. In this case, the failure of the parents to substantially comply for a period of 12 months after an adjudication of the child as a dependent child or the child’s placement into shelter care, whichever came first, constitutes evidence of continuing abuse, neglect, or abandonment unless the failure to substantially comply with the case plan was due either to the lack of financial resources of the parents or to the failure of the department to make reasonable efforts to reunify the parent and child. The 12-month period begins to run only after the child’s placement into shelter care or the entry of a disposition order placing the custody of the child with the department or a person other than the parent and the approval by the court of a case plan with a goal of reunification with the parent, whichever came first.
§ 39.806(l)(e), Fla. Stat. (2006).

. The following exchange took place after DCFS rested and Z.M.'s counsel stated a motion to dismiss:
THE COURT: It looks like the allegations in Paragraph 12 would be more under 39.806(l)(e). Is that right? I mean, the case plan failure. So it’s alleged as a(c) ground.
MS. SALVATORE: Well, the Department did not amend that, Your Honor, at any time.
MR. KEEP: I think it's clear that the Department has proven — and yes, to answer your question, yes, it does seem more apt to be under a provision (ej.
MS. SALVATORE: Your Honor, I would object to them amending the Petition at this time when I'm making a motion to dismiss the Petition.
MR. KEEP: ... So I think under [l](e) or [l](c), irrespective of services, I think the Department can prevail....
[[Image here]]
That is correct. It is a non case [sic] compliance argument that is being made. But I think that the Department would also prevail under the irrespective of services provision.
[[Image here]]

And we are not amending the petition, Your Honor.

(Emphasis supplied.)

. The father's parental rights to the children have been terminated.

. In contrast to the trial court’s ruling on the record, the court's written order does state (conclusorily) that DCFS proved by clear and convincing evidence grounds for termination of Z.M.’s parental rights under section 39.806(1)(c). But the only finding in support is that Z.M. failed to complete (still ongoing) therapy, a domestic violence assessment through Hubbard House, and a Batterer’s Intervention Program. In light of the other evidence Z.M. adduced, these findings do not answer the question whether Z.M.’s "continuing involvement ... in the parent-child rela-tionshipfs] threatens the life, safety, well-being, or physical, mental, or emotional health of the children].”