# Third District Court of Appeal

**State of Florida**

Opinion filed June 03, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-2448
Lower Tribunal No. 14-439
_____

**Homestead Land Group, LLC,**
Appellant,

vs.

**City of Homestead, etc., and First Baptist Church of Perrine, Inc.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Victoria Sigler, Judge.

Broad and Cassel, and Edgar Lopez (Orlando), for appellant.

Weiss Serota Helfman Cole & Bierman, P.L., and Laura K. Wendell and Peter D. Waldman, for City of Homestead; Hinshaw & Culbertson, LLP, and John C. Lukacs, for First Baptist Church of Perrine, Inc.

Before ROTHENBERG, SALTER, and LOGUE, JJ.

ROTHENBERG, J.

Homestead Land Group, LLC ("HLG") appeals the trial court's Stipulated Final Judgment allowing the City of Homestead ("the City") to acquire a portion of property owned by First Baptist Church of Perrine, Inc. ("Perrine Baptist") by eminent domain for an agreed-upon sum of $103,700 plus attorney's fees and costs. Because the record reflects that HLG had no interest in the subject property at the time of the taking, we affirm.

Miami Baptist Association ("Miami Baptist") conveyed a plot of land known as "Parcel 14" to Perrine Baptist in 2007 via a quitclaim deed. The deed contained a reversionary clause stating, in relevant part, that "title shall revert back to [Miami Baptist] if [Perrine Baptist] is unable to secure proper local zoning for a church." Perrine Baptist maintained title over the property until 2014, when the City filed a petition in eminent domain to take a portion of Parcel 14 ("the Taken Property") for the purpose of expanding the abutting roadway.

In its petition, the City named Perrine Baptist as a defendant and alleged that Perrine Baptist was the owner of Parcel 14 in fee simple. The City also named Miami Baptist as a defendant and alleged that Miami Baptist was the owner of a "potential reverter interest in [Parcel 14]" that should be joined simply to extinguish the unclaimed interest.

Perrine Baptist answered and participated in the litigation throughout, but Miami Baptist never filed anything in the action despite being named as a

2

defendant and served with a summons. The trial court entered its Order of Taking on February 19, 2014, which provided that the rights to the Taken Property would vest with the City immediately upon the City depositing a good faith sum into the court registry. The following day, the City made its deposit and thus took title to the Taken Property. § 74.061, Fla. Stat. (2014) ("Immediately upon the making of the deposit, the title or interest specified in the petition shall vest in the petitioner, and the said lands shall be deemed to be condemned and taken for the use of the petitioner, and the right to compensation for the same shall vest in the persons entitled thereto.").

Perrine Baptist filed a motion to withdraw the funds from the court registry and was given permission to withdraw the full sum via court order on March 5, 2014. At some point after withdrawing the funds—the record is not clear precisely what date—Perrine Baptist voluntarily gifted the remaining portion of Parcel 14 (that which was left after the taking) ("the Remainder Property") back to Miami Baptist and also gave Miami Baptist all the money it had withdrawn from the court registry.

Several months later, on July 28, 2014, the City, Perrine Baptist, and the Miami-Dade County Tax Collector submitted to the trial court a joint motion for entry of stipulated final judgment, which was scheduled to be heard on August 6,

3

2014. The stipulated final judgment purported to resolve all rights to the Taken Property and to fix and finalize the amount owed by the City for the taking.

In the interim between the filing of the joint motion and the hearing on that motion, Miami Baptist sold the Remainder Property to HLG and also assigned any rights it may have had to the Taken Property and any interest in the eminent domain proceeding to HLG. On August 5, 2014, one day before the final hearing on the joint motion for entry of stipulated final judgment, HLG filed an objection to the entry of proposed final judgment and also filed an answer to the eminent domain petition requesting a jury trial on valuation. In that answer, HLG asserted that it was the owner of the Taken Property by operation of the reversionary clause in the 2007 quitclaim deed and that it had the right to contest the valuation in the eminent domain proceeding. The trial court conducted a hearing on HLG's objections and motions and ultimately denied HLG any relief. HLG appeals that order.

The Florida Constitution safeguards the citizens of Florida by requiring due process of law before any governmental taking: "[N]o person shall be deprived of life, liberty or property without due process of law . . . ." Art. I, § 9, Fla. Const. In terms of property rights, this guarantee ensures that private property shall be taken only "for a public purpose and with full compensation therefore paid to each owner or secured by deposit in the registry of the court and available to the owner." Art.

4

X, § 6, Fla. Const. Due process of law requires, at a minimum, that a party in interest to a governmental proceeding be given reasonable notice and a meaningful opportunity to be heard. N.C. v. Anderson, 882 So. 2d 990, 993 (Fla. 2004). Thus, if HLG had a legitimate interest in the Taken Property at the time of the taking, the trial court erred in denying HLG an opportunity to contest the valuation. See § 71.051, Fla. Stat. (2014) ("[N]othing shall prevent any person who is shown by the record to be interested in the property from appearing before the jury to claim the amount of compensation that he or she conceives to be due for the property."). We hold, however, that the trial court did not err because HLG could assert no interest in the property at the date of the taking as a matter of law.

At the outset, we note that HLG's rights and claims to the property come only by way of Miami Baptist's assignment of its rights. Accordingly, HLG's rights and claims are wholly derivative of those that could have been asserted by Miami Baptist. HLG essentially stands in the shoes of Miami Baptist, and HLG can assert against the City only those claims or defenses available to Miami Baptist. Farkus v. Fla. Land Sales & Dev. Co., 915 So. 2d 688, 689 (Fla. 5th DCA 2005) ("[A]n assignment gives the assignee no greater rights . . . than those held by the assignor."); Shreve Land Co. v. J & D Fin. Corp., 421 So. 3d 722, 724 (Fla. 3d DCA 1982) ("The law is well settled that an assignee succeeds to his assignor's rights under the assignment . . . and takes it with all the burdens to which it is

5

subject in the hands of the assignor."). Moreover, the relevant date for determining the parties with an interest in the property was the date title vested in the City: February 20, 2014. Canney v. City of St. Petersburg, 466 So. 2d 1193 1195 (Fla. 2d DCA 1985) ("Damages to compensate for the taking of land or for injury to land not taken belong to the one who owns the land at the time of the taking or injury."); § 74.061, Fla. Stat. (2014) ("Immediately upon the making of the deposit, the title or interest specified in the petition shall vest in the petitioner, and the said lands shall be deemed to be condemned and taken for the use of the petitioner, and the right to compensation for the same shall vest in the persons entitled thereto."). Thus, we examine the interest Miami Baptist had in the Taken Property on February 20, 2014, to determine whether HLG can assert any claim to contest the valuation of the Taken Property.

A review of the record demonstrates that Miami Baptist had no legally cognizable interest in the property on the date of taking. Miami Baptist conveyed the rights to Parcel 14 to Perrine Baptist in full in 2007, and Miami Baptist only had rights to the property via the reversionary clause if Perrine Baptist "is unable to secure proper local zoning for a church." In order to prove that the reversion had occurred and that Miami Baptist was the fee holder, Miami Baptist would not only have to demonstrate that Perrine Baptist had not yet secured proper zoning, but also that Perrine Baptist could not in the future secure such zoning. The record

6

reflects that neither Miami Baptist nor HLG could make such a showing.  Miami Baptist **never** attempted to exercise its rights to the property, nor is there any evidence showing that the property could not be so zoned.  In fact, a review of the local zoning ordinances reveals that the property may well be presently zoned to allow a church to be built.  The potential reversionary interest never matured, and Miami Baptist had no interest in the Taken Property at the date of taking.  As a result, HLG, as Miami Baptist's assignee in interest, had no interest in the Taken Property, and the trial court correctly denied HLG the right to contest the valuation.  The fact that Perrine Baptist conveyed the property and the proceeds derived from the taking to Miami Baptist and that Miami Baptist conveyed the Remainder Property to HLG after the taking is legally irrelevant.

Affirmed.