# FIFTH DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

Case Nos. 5D2024-3440
5D2024-3476
LT Case No. 60-2023-DP-7

_____

GUARDIAN AD LITEM and
DEPARTMENT OF CHILDREN and
FAMILIES,

     Appellants,

     v.

S.P. MOTHER OF E.X.P., A MINOR
CHILD,

     Appellee.

_____

On appeal from the Circuit Court for Sumter County.
Michelle T. Morley, Judge.

Sara Elizabeth Goldfarb, Statewide Director of Appeals, and
Amanda Victoria Glass, Senior Attorney, of Guardian ad Litem
Office, Tallahassee, for Appellant, Guardian ad Litem.

Rachel Batten, of Children's Legal Services, Brooksville,
for Appellant, Department of Children and Families.

Richard F. Joyce, Special Assistant Regional Counsel, of Office of
Criminal Conflict and Civil Regional Office, Casselberry, for
Appellee.

June 5, 2025

BOATWRIGHT, J.

Appellants, Department of Children and Families (DCF) and the Guardian ad Litem (GAL), appeal the trial court's final order denying DCF's petition for termination of parental rights as to S.P. (the Mother). Appellants claim that the trial court erred when it sua sponte ordered the case to be closed in permanent guardianship, despite finding that the Mother failed to complete her case plan and had not remedied the conditions for return. We agree with Appellants and reverse.

I.

The child, E.P., was born in December of 2018 and is currently six years old. In April 2023, a child protective investigation was initiated after the Mother called the maternal aunt and told her that she was suicidal and asked her to pick up the child. Based on the incident, the Mother was hospitalized pursuant to Baker Act proceedings and tested positive for methamphetamine. The Mother was homeless at the time and had no source of income. After her release from hospitalization, the Mother refused to engage in services with DCF.

The investigation further revealed that the Mother had a history of mental health issues, which were exacerbated by her substance abuse. In addition, the Mother had a pattern of violent and impulsive behaviors, such as hitting the child for simple mistakes or screaming that she would kill him. The Mother would leave the child with family or friends for days while she used drugs. The investigation also noted that the Mother had a history of involvement with DCF related to substance abuse. In 2022, the Mother received services after it was reported that she was using methamphetamine in the home. In addition, in that same year the Mother was placed on felony probation based on convictions for grand theft of an automobile and possession of marijuana and drug paraphernalia.

Based on its investigation, DCF filed a shelter petition, and E.P. was sheltered in April 2023 due to the Mother's physical abuse of the child, drug use, untreated mental health issues, and lack of housing. The whereabouts of E.P.' s father were unknown

2

at this time, as the Mother would not disclose his name and indicated that he was homeless. As a result of the shelter, the Mother was ordered to have supervised visits with E.P. The child was initially placed in foster care but was subsequently placed with the maternal aunt after a positive home study.

Shortly thereafter, DCF filed a Petition for Dependency. In May 2023, the court accepted a reunification case plan for the Mother and adjudicated the child dependent based on the Mother's consent. Subsequently, E.P.'s father, L.P. (the Father) was located in jail in California, and paternity was established. DCF filed a supplemental dependency petition alleging abandonment as to the Father.

Regarding the Mother's case plan, DCF provided the Mother with counseling as well as referrals for housing and income. The Department also provided her with referrals for parenting classes, drug screens, substance abuse evaluations, and counseling services. However, over the next few months, the Mother did not make any progress on completing her case plan.

In August 2023, the GAL reported that the Mother was not visiting E.P. consistently and not focusing on him during the visits. The Mother was often late to the visits and had to be reminded not to bring unapproved people with her. In October 2023, at an initial judicial review hearing, the general magistrate noted that the Mother's visits continued to be sporadic. The magistrate recommended adding a concurrent goal of adoption due to her lack of engagement with her case plan.

In November 2023, the Mother declined to submit to a urinalysis and admitted to using methamphetamine. In December of that same year, the Mother sent a video threatening the maternal aunt, her fiancé, and the case manager. Specifically, the Mother threatened to tie them up, set them on fire, and kidnap the child.

Through the first part of 2024, the Mother continued to miss visits and was not engaging in services. In March of 2024, weeks before the case plan was to expire, the Mother told the case manager that she would enter into a drug rehabilitation program,

but she took no steps to do so and continued to abuse methamphetamine.

The court then held a permanency judicial review hearing in March 2024. At the hearing, the court reviewed criminal records from the Mother's probation case showing a recent positive drug screen for methamphetamine and marijuana, which the court found suggested the Mother's drug usage was ongoing. At that time, the court again found the Mother noncompliant with her case plan, and the Mother admitted to struggling with completing her case plan along with her probation requirements. The court also found the Mother's visitation did not meet the case plan requirements in frequency or duration. Based on the information and findings, the court eliminated the goal of reunification and established a sole goal of adoption. In April 2024, the Mother was arrested for violating her probation by possessing methamphetamine. As a result of her violation, she was sent to a long-term residential rehabilitation facility.

In May 2024, DCF filed a petition to terminate the parental rights of both parents. As to the Mother, DCF alleged that the Mother materially breached the case plan and failed to substantially comply with the case plan within 12 months of the child's shelter pursuant to section 39.806(1)(e)(1) and (1)(e)(2), Florida Statutes (2024). As to the Father, DCF alleged abandonment pursuant to section 39.806(1)(b). In August, DCF was able to locate the Father after a diligent search. The Father told the case manager that he could not care for the child. He was thereafter arrested on drug possession charges. Pertinent to this appeal, the petition clearly indicated that the DCF sought to terminate the rights of both the Mother and the Father and contained no mention or allegations regarding a single-parent termination.

An adjudicatory hearing was held in September 2024 on DCF's petition to terminate the parental rights of the Mother and Father. On the morning of the hearing, the court unsuccessfully attempted to contact the jail to reach the Father, who had recently been arrested again, to hold his advisory hearing. The court continued the Father's advisory hearing until later in the week and

4

proceeded to trial on DCF's petition against the Mother, thus effectively bifurcating the proceedings.

After the conclusion of the evidence, the court found by clear and convincing evidence that "[t]he Department used reasonable efforts to bring [the Child E.P.] to permanency and that the Mother [S.P.] has failed to comply with her case plan and failed to timely and adequately ameliorate the conditions that led to removal of the child from the Mother's care." However, the court denied DCF's petition, finding that DCF "failed to prove that there is no less restrictive means to bring permanence to the child." In addition, the trial court found that DCF "failed to prove grounds for a single-parent termination of parental rights as required by Florida Statutes" even though it recognized that a petition to terminate the Father's rights was still pending. Finally, though never raised in any pleading nor requested by either party, the trial court closed the case in permanent guardianship. This appeal follows.

## II.

Before a trial court can terminate a parent's rights to his or her child, DCF must prove the following three elements by clear and convincing evidence: (1) at least one of the grounds for termination listed in section 39.806, Florida Statutes (2024), has been established; (2) termination is in the child's manifest best interests under section 39.810, Florida Statutes (2024); and (3) termination is the least restrictive means of protecting the child from harm. *S.M. v. Fla. Dep't of Child. & Fams.,* 202 So. 3d 769, 776-77 (Fla. 2016); *see also Statewide Guardian ad Litem Off. v. C.C.,* 382 So. 3d 614, 619 (Fla. 2024).

Generally, the standard of review in a termination of parental rights case is highly deferential. *Guardian ad Litem Program v. Dep't of Child. & Fams.,* 207 So. 3d 1000, 1003 (Fla. 5th DCA 2016). However, deference to the trial court is not required when "there is no theory or principle of law that would support the trial court's conclusions of law." *Id.* Therefore, when the issue presented involves the trial court's interpretation of the law, as here, review is de novo. *G.S. v. T.B.,* 985 So. 2d 978, 982 (Fla. 2008).

5

On appeal, DCF and GAL argue that the trial court erred by: (1) closing the case in permanent guardianship; (2) violating DCF's due process rights by denying the petition based on lack of single parent grounds when it was not pled in the petition, asked for during the hearing, nor contemplated by any party going into the hearing; (3) misapplying the least restrictive means test to close the case in permanent guardianship; and (4) not properly considering the manifest best interest factors found in section 39.810, Florida Statutes. We agree with Appellants and therefore reverse.

A.

Initially, the trial court erred by sua sponte closing the case in permanent guardianship. As Appellants aptly point out, no party pled or requested the case to close in permanent guardianship or was given any notice before or during the adjudicatory hearing that the court would close the case in permanent guardianship. In addition, the court failed to make any of the findings required by section 39.6221, Florida Statutes (2024). *See Dep't of Child. & Fams. v. J.J.,* 398 So. 3d 423, 426 (Fla. 4th DCA 2024) (holding parties have a due process right to be provided with sufficient notice that permanent guardianship will be considered and the lower court errs in entering permanent guardianship orders without sufficient notice and without conducting an evidentiary hearing to make the findings required under section 39.6221). Appellee agrees and concedes error; and we consequently conclude the trial court erred as a matter of law in sua sponte closing the case in permanent guardianship.

B.

In addition, the trial court erred when it applied the legal standard for a single parent termination in denying the DCF's petition. In its final order, the trial court indicated that DCF failed to establish grounds for a single-parent termination of parental rights as required by Florida Statutes. The significance of this is that section 39.811(6), Florida Statutes (2024), governs single parent termination proceedings. In particular, section 39.811(6)(e) delineates the statutory circumstances under which a single parent termination of parental rights may be granted.

6

Termination of parental rights under section 39.806(1)(e), due to failing to comply with a case plan or materially breaching a case plan, is not one of those circumstances listed in section 39.811(6)(e). The trial court appears to have (albeit incorrectly) reasoned that because DCF was seeking to terminate the Mother's parental rights pursuant to section 39.806(1)(e)(1) and (3), it could not grant a single-parent termination of parental rights on those bases.

However, this case did not involve a single parent termination proceeding. The record is clear that DCF's petition sought the termination of the parental rights of both the Mother and Father. Therefore, we agree with Appellants' contention that when the trial court denied the petition on this unpled, unrequested basis, it both violated DCF's right to procedural due process and applied the wrong legal standard.

Procedural due process "requires both reasonable notice and a meaningful opportunity to be heard." *N.C. v. Anderson*, 882 So. 2d 990, 993 (Fla. 2004). Our court has held that "terminating parental rights on a ground not pled constitutes a denial of the procedural due process rights of notice and a fair hearing." *S.H. v. Dep't of Child. & Fams.*, 264 So. 3d 1094, 1096 (Fla. 5th DCA 2019); *See also Z.M. v. Dep't of Child. & Fam. Servs.*, 981 So. 2d 1267, 1269 (Fla. 1st DCA 2008) (reversing order of termination where trial court first raised unpled ground after petitioner's case-in-chief). This principle should hold equally true with respect to DCF's due process rights: when a trial court denies DCF's petition based on grounds not pled in the petition and not requested at the hearing, the trial court similarly violates DCF's right to procedural due process.

DCF filed a petition seeking to terminate the rights of both the Mother and Father. DCF did not reference or seek a single parent termination in its petition, nor was this issue raised by the parties during the hearing. All parties were on notice of this and the record clearly indicates that the parties agreed the initial adjudicatory hearing would only address the evidentiary portion of the petition as to the Mother, leaving final disposition of the petition pending service and resolution regarding the Father. During the Mother's evidentiary hearing, DCF did not seek single

7

parent termination; in fact, at the conclusion of the evidence, counsel for DCF specifically stated, "we cannot release the child for adoption as of yet because we still have to deal with the father . . . but we would ask that today the court do what we can . . . to move forward towards permanency." In its oral ruling, the trial court noted that the petition was still pending as to the Father and again referenced same in the order denying termination. Thus, by denying DCF's petition on a basis not pled nor contemplated by the parties in the bifurcated evidentiary hearing, the court deprived DCF of procedural due process.[1]

This error is underscored by the fact that the trial court found by clear and convincing evidence that "[t]he Department used reasonable efforts to bring [the Child E.P.] to permanency and that the Mother [S.P.] has failed to comply with her case plan and failed to timely and adequately ameliorate the conditions that led to removal of the child from the Mother's care." Thus, had the trial court not misapplied the legal standard for a single parent termination, the record indicates the court would have found grounds for termination of S.P.'s parental rights, as it found that at least one of the grounds for termination listed in section 39.806 had been established. Since DCF sought to terminate the rights of both the Mother and Father and did not seek a single parent termination under section 39.811(6), we find that had the trial court applied the correct legal standard, then based on the evidence and the court's own conclusions, that DCF did prove by clear and convincing evidence at least one of the grounds for termination listed in section 39.806, i.e., that the Mother materially breached the case plan and failed to substantially comply with the case plan within 12 months of the child's shelter

---

[1] It is worth noting that even if DCF had sought a single parent termination pursuant to section 39.811(6), the trial court failed to make any of the required findings under section 39.811(6) to justify its ruling regarding a single parent termination. *See In re L.C.* (*J.T. v. Dep't of Child. & Fam. Servs.*), 908 So. 2d 568 (Fla. 2d DCA 2005) (holding trial court must make specific findings of fact in the final order for all single parent termination cases or at the very least, the circumstances establishing the factors in section 39.811(6) must be apparent on the face of the order absent specific findings).

pursuant to section 39.806(1)(e)(1) and (1)(e)(2), Florida Statutes (2024).

## C.

Next, Appellants argue that the trial court erred when it found that DCF did not prove that there were no less restrictive means to bring permanence to E.P. While the trial court did not provide any written findings for its conclusion that termination was not the least restrictive means, the language in the trial court's order demonstrates that the court was improperly focused on the Mother's efforts to continue working towards sobriety and completing her case plan tasks while her child was placed in a permanent guardianship.

Since parental rights constitute a fundamental liberty interest, DCF must establish in each case that termination of those rights is the least restrictive means of protecting the child from serious harm. *Padgett v. Dep't of Health & Rehab. Servs.,* 577 So. 2d 565, 571 (Fla. 1991). "The least restrictive means prong of the termination of parental rights test is tied directly to the due process rights that must be afforded to a parent before his or her parental rights are terminated and is intended to protect the rights of both the parent and the child." *S.M.,* 202 So. 3d at 778. Specifically, this prong focuses on what actions were taken by DCF before filing a petition to terminate the parent's rights. *Id.*

To satisfy the least restrictive means prong, DCF "must ordinarily prove that before it files a petition to terminate a parent's rights, that it made a good faith effort to rehabilitate the parent and reunite the family." *Id.* When DCF is not moving directly from sheltering the child to seeking termination of the parent's rights*,* "this prong is generally satisfied by DCF offering the parent a case plan and then providing the parent with the help and services necessary to complete the case plan." *Id.* However, "least restrictive means does not mean that no alternative to termination of parental rights is conceivable by a court." *J.P. v. Fla. Dep't of Child. & Fams.,* 183 So. 3d 1198, 1204-05 (Fla. 1st DCA 2016). The least restrictive means prong "is not intended to preserve a parental bond at the cost of a child's future." *Dep't of Child. & Fams. v. B.B.,* 824 So. 2d 1000, 1009 (Fla. 5th DCA 2002).

In this regard, the Florida Supreme Court has expressly concluded that permanent guardianship is not a less restrictive alternative to termination simply because some contact remains possible or even beneficial to a child. *S.M.,* 202 So. 3d at 784; *Statewide Guardian ad Litem Program v. A.A.,* 171 So. 3d 174, 178 (Fla. 5th DCA 2015) (generally, a court should not consider permanent guardianship as a permanency option unless the court first determines that reunification or adoption is not in the best interest of the child, even if evidence shows that limited and supervised contact between the parent and children would not be harmful). The reason for this, according to the Florida Supreme Court, is that the "test is not whether, under controlled circumstances, a parent can have contact with the child and develop an emotional bond, but whether a mother or father can be a parent to the child, with all of the responsibility and care that entails." *S.M.*, 202 So. 3d. at 780 (quoting *S.M. v. Dept. of Child. & Fams.,* 190 So. 3d 125, 129 (Fla. 4th DCA 2016)). Therefore, "if reunification is not possible because the father or mother cannot or will not assume responsibility as a parent to the child, as demonstrated, for example, by the repeated failure to comply with a case plan, then termination is the least restrictive means of preventing harm." *Id.*

In light of this, the Florida Supreme Court has held that "consideration of the bond between the parent and child and the best permanency decision for the child is appropriate and relevant in an analysis of the second prong of the termination of parental rights test, which requires the trial court to consider the manifest best interests of the child by evaluation of the relevant factors listed under section 39.810, Florida Statutes." *Id.* at 780-81. However, "to require consideration of the bond between the parent and child in the third prong of the test, the least restrictive means prong, would be unnecessarily duplicative and confuse the purpose of that prong: to ensure that the parent is afforded due process by the State before his or her fundamental right to be a parent to his or her children is terminated." *Id.* at 781.

In this case, DCF provided the Mother with a case plan designed to reunify her with the child, E.P. The Mother had a full

and fair opportunity to comply with the case plan. DCF provided the Mother "with the help and services necessary to complete the case plan." *Id.* at 779. In particular, DCF provided the Mother with counseling, as well as referrals for housing and income, with referrals for parenting classes, drug screens, substance abuse evaluations, and counseling services. She was provided with the opportunity to establish a relationship with E.P. through visitation. However, the Mother failed to meaningfully engage in services, and though offered drug treatment to assist her with her biggest hurdle, she continued using methamphetamine, was arrested for such, and at the time of trial continued to be unable to safely parent E.P. Given this evidence presented at the hearing, the court found, "the Department used reasonable efforts to bring [the Child E.P.] to permanency and that the Mother has failed to comply with her case plan and failed to timely and adequately ameliorate the conditions that led to removal of the child from the Mother's care." This is all the least restrictive means prong requires, and thus the trial court should have found that DCF met its burden as to this element.

Notwithstanding these findings, the trial court did exactly what the Florida Supreme Court held was impermissible—it found that the least restrictive means test had not been met based on the existence of an emotional bond between the parent and child, which it determined could be preserved without terminating the Mother's parental rights through a permanent guardianship. In so doing, the trial court applied the incorrect legal standard and considered factors that were impertinent to the least restrictive means test.

D.

Finally, the trial court failed to properly determine whether termination of the Mother's parental rights was in the manifest best interests of the child. As the GAL points out, the phrase "best interest" appears nowhere in the termination order; in fact, it is difficult to ascertain from the order whether the court even performed a manifest best interests analysis.

Once a court determines that a termination ground has been proved, according to section 39.810, the court shall then consider

11

whether the termination of the parental rights is in the manifest best interests of the child. The court, in "determining the manifest best interests of the child, . . . shall consider and evaluate all relevant factors, including but not limited to" all eleven factors listed under section 39.810. *Id.; see also In re A.C.,* 751 So. 2d 667, 668-69 (Fla. 2d DCA 2000). The trial court is also required to make written findings as to each of the eleven statutory factors. *D.W.Q. v. A.B.,* 200 So. 3d 87, 89 (Fla. 5th DCA 2015) (citations omitted). When the trial court fails to specifically consider the manifest best interest factors, the order regarding the termination of parental rights is invalid. *D.H. v. Dep't of Child. & Fams.*, 331 So. 3d 274, 275 (Fla. 2d DCA 2021).

Neither the trial court's oral pronouncement nor its final order specifically references that it evaluated the manifest best interests of the child. Although unclear, it appears the trial court did not go through this analysis because the court had previously determined that the least restrictive means test had not been met and DCF had not met its burden to prove a single-parent termination, and thus, an analysis of the manifest best interests was unnecessary. However, what is clear is that the trial court never considered all eleven statutory factors listed in section 39.810. Thus, the trial court committed reversible error by failing to properly address the manifest best interest of the child.

## III.

We reverse the trial court's order denying DCF's petition to terminate S.P.'s parental rights and closing the case in a permanent guardianship. Initially, we note the trial court erred in closing the case in a permanent guardianship, and we accept Appellee's concession of error on this matter. Next, as stated above, we find that the trial court erred in analyzing the proceedings as a single-parent termination case. In addition, the trial court did not apply the correct legal standard in finding that the least restrictive means were not met. We note that the record shows that if the court had not committed these legal errors, it would have been bound to find that DCF proved by clear and convincing evidence that at least one of the grounds listed in section 39.806 for termination was established and that termination was the least restrictive means for protecting the child from harm. Thus, we find

that DCF established these two elements regarding termination of the Mother's parental rights. As a result, the trial court erred by not determining if the termination was in the manifest best interests of the child. We therefore reverse for proceedings consistent with this opinion and for the trial court to make findings as to the manifest best interests of the child.[2]

REVERSED and REMANDED for further proceedings consistent with this opinion.

EDWARDS, C.J., and HARRIS, J., concur

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

---

[2] We note that on remand the trial court judge that presided over the adjudicatory hearing appears to have retired. If this is the case, then on remand a new adjudicatory hearing should be held as to the manifest best interests of the child.