DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**S.M.,** the Mother,
Appellant,

v.

**DEPARTMENT OF CHILDREN AND FAMILIES,**
Appellee.

No. 4D15-2186

[November 18, 2015]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Michael Heisey, Judge; L.T. Case No. 562011DP000093.

Antony P. Ryan, Regional Counsel and Richard G. Bartmon, Assistant Regional Counsel, Office of Criminal Conflict and Civil Regional Counsel, West Palm Beach, for appellant.

Karla Perkins, Miami, for appellee Department of Children and Families.

Thomasina F. Moore and Laura E. Lawson, Sanford, for appellee Guardian ad Litem Program.

WARNER, J.

A mother appeals a final judgment terminating her parental rights to her three children. She argues that the Department of Children and Families failed to prove that termination was the least restrictive means to protect the children from harm, because her cousin was raising the children, and permanent guardianship would be less restrictive than termination of her rights. We affirm, concluding that DCF proved, and the mother does not contest, the grounds for termination and that reunification would be harmful to the children. Because reunification was not possible, the constitutional test for termination of parental rights was met, and the court was not required to consider a permanent guardianship.

The mother had three children, born in 2007, 2008, and 2010. Her last child tested positive for drugs when born, and a case manager for a

volunteer agency came to work with the mother and provide a voluntary services plan for the mother. The plan included random drug tests and counselling, and the recommendation that she obtain employment, housing, and child care. The mother did not comply with any of the recommendations. The case manager also observed that one of the children had decayed teeth and needed dental work, but the mother did not follow through on making any appointment to have the necessary work done. Despite repeated visits from the case manager, the mother never complied with any of the tasks in the voluntary case plan, other than going once for a drug test which proved positive for marijuana. The mother moved several times without telling the case manager where she was moving. When the case manager finally found her in a home under construction and containing hazards to the children, the case manager filed an abuse report with DCF.

DCF first filed a shelter petition for the children and later filed a dependency petition. Ultimately, it placed the two older children in the care of the mother's great-aunt and the youngest child with the mother's cousin. After the children were adjudicated dependent in February 2012, a case plan was developed for the mother which required her to have drug treatment and to obtain stable housing and a job. The mother made no effort to complete any of her case tasks. In fact, she explicitly refused to comply with drug screening and counselling. She admitted to using marijuana on a regular basis and essentially saw nothing wrong with it. She did not visit with the children on a regular basis. The mother also routinely missed court hearings.

When her great-aunt became ill, the mother moved back to the area and assisted with the children for a while. Nevertheless, she continued to be non-compliant with drug testing as well as with finding stable housing and a job. Finally, in June 2013, the mother agreed to seek drug treatment. However, she was not compliant with court-ordered drug screening. When she was screened, she continually tested positive for marijuana. She did not successfully complete the drug treatment.

Unfortunately, the great-aunt suffered a stroke and died in March 2014. The cousin then took custody of the two children who had previously been in the great-aunt's care. The case manager noted that the children reacted positively with the mother and clearly loved her, but they were very attached to the cousin as their caregiver. After the death of the great-aunt, DCF filed a petition to terminate the rights of the mother.

In July 2014, the case manager tried again to get the mother in for drug screening and treatment. Finally, a bed opened up in a treatment facility.

But when the mother was told that the treatment could take up to six months, she refused to participate and told the case manager that DCF "could make other arrangements for her children to be adopted."

At the final hearing on termination, in addition to the testimony of case managers as to the mother's complete failure to comply with any case plan tasks despite years of assistance, a psychologist testified that the mother had a narcissistic personality disorder, which meant that she put her own needs and desires above those of the children. This was evidenced in her refusal to obtain drug treatment as well as in failing to find a job or do any work. The psychologist did not recommend that the children be placed with the mother.

The cousin, who had custody of all three children, acknowledged that the mother helped out on occasion with the children and was the "primary babysitter" for the youngest child when the cousin would work. However, the mother had also moved away recently and saw the children infrequently. The cousin loves the children and wants to adopt them. She would allow the mother continued contact because the children know her. She reported that the children love their mother, and "if [the mother's] situation was different and she could, you know, have her own place and was stable, it would be a good thing [for the children] to be with her, but that's not the case."

At the close of the hearing, the mother's counsel argued against termination of parental rights and maintained that the evidence showed that the mother had a good relationship with her children and could rehabilitate herself if given more time and that termination was not the least restrictive means of preventing harm to the children. The court requested proposed judgments from each party, which were circulated to the parties.

The court adopted DCF's proposed final judgment and terminated the mother's parental rights. In the final judgment, the court found that the mother had made essentially no effort to comply with the case plan. When the children were removed from her because of her transient, unstable lifestyle, she made no effort to improve and remained unstable. Her drug use continued unabated, and she spent whatever money she had on drugs and not on her children. The court found no reasonable basis to think that the mother would improve if given more time, as she had failed to show any progress in over three years. The court concluded that DCF had proven grounds for termination as well as that termination was in the manifest best interest of the children.

As to whether termination was the least restrictive means to prevent harm to the children, the court noted that the least restrictive means test required the court to look at measures short of termination if it would allow the children to be reunited with the parent. *See Padgett v. Dep't of Health & Rehabilitative Servs.*, 577 So. 2d 565, 571 (Fla. 1991). The court concluded that reunification was not possible because the mother failed at all three case plans offered to her and did not do anything to obtain stable housing or stable employment, or to deal with her drug addiction. She was not likely to change in the future. The court therefore terminated the mother's rights. The mother now appeals.

The three-step process for terminating parental rights requires that the trial court make the following findings:

> 1) One or more of the grounds for termination under section 39.806, Florida Statutes (2014), has been established by clear and convincing evidence;
>
> 2) Termination is in the manifest best interest of the child under section 39.810, Florida Statutes (2014); and
>
> 3) Termination is the least restrictive means of protecting the child from harm.

*J.G. v. Dep't of Children & Families*, 22 So. 3d 774, 775 (Fla. 4th DCA 2009). Mother does not challenge the trial court's findings as to the first and second steps in this analysis. Rather, she challenges the court's findings under the third step, arguing that termination of her parental rights was not the least restrictive means of protecting her children from harm.

As parental rights constitute a fundamental liberty interest, in order to terminate them, DCF must proceed in a narrowly-tailored manner and must prove, in addition to the statutory requirements for termination of parental rights, that termination is the least restrictive means of protecting the child from serious harm. *Padgett*, 577 So. 2d at 570. The fundamental interest of a parent is in the "care, custody, and management of their child." *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). The only limitation on that right is the welfare of the child itself. *Padgett*, 577 So. 2d at 570.

The court in *Padgett* explained that this third step, also referred to as the "least restrictive means" test, requires DCF to "ordinarily [] show that it has made a good faith effort to rehabilitate the parent and reunite the family, such as through a current performance agreement or other such

plan for the present child." *Id.* at 571. That is because the fundamental right protected is the right to *parent*, i.e. to have the care and custody of a child and to bring the child up within the bonds of family, not merely to be an occasional presence in the life of the child.

The "least restrictive means" test "is not intended to preserve a parental bond at the cost of a child's future." *Dep't of Children and Families v. B.B.*, 824 So. 2d 1000, 1009 (Fla. 5th DCA 2002). Rather, "it simply requires that measures short of termination should be utilized if such measures can permit the safe *re-establishment* of the parent-child bond." *Id.* (emphasis added). "It is unreasonable to prevent the children from being adopted if reunification with the parent is impossible and it is otherwise in the children's best interests, even if evidence shows that limited and supervised contact between the parent and children would not be harmful." *Statewide Guardian Ad Litem Program v. A.A.*, 171 So. 3d 174, 177 (Fla. 5th DCA 2015).

Based on the extensive evidence at trial, the court found that DCF had made more-than-reasonable efforts to reunite the mother with her children, and the mother was solely responsible for her failure to substantially comply with the case plan. The trial court found that DCF had established three grounds for termination under section 39.806, Florida Statutes (2014), by clear and convincing evidence, and that termination was in the manifest best interest of the children under section 39.810, Florida Statutes (2014). The court further found that reunification with the mother would pose a significant risk of harm to the children, just as it had at the inception of DCF's involvement. Therefore, the least restrictive means test was met.

Although the children were placed with a relative, the availability of relative placement does not mean that termination of the mother's parental rights is not the least restrictive means of preventing harm. Courts have frequently determined that the availability of a relative placement is not the dispositive consideration under the least restrictive means test. *See In re Z.C.*, 88 So. 3d 977 (Fla. 2d DCA 2012); *S.S. v. Dep't of Children & Family Servs.*, 891 So. 2d 1068, 1070 (Fla. 2d DCA 2004); *R.L. v. Dep't of Children & Families*, 955 So. 2d 1240 (Fla. 5th DCA 2007); *see also N.S. v. Dep't of Children & Families*, 36 So. 3d 776, 779 (Fla. 3d DCA 2010) (holding that "[t]he existence of possible placement with a relative is irrelevant to the least restrict means test, where DCF made reasonable [but unsuccessful] efforts to rehabilitate the Mother and provide services to her and her children with the goal of reuniting them as a functional family").

5

The mother relies on *C.D. v. Department of Children and Families*, 164 So. 3d 40 (Fla 1st DCA 2015), which is factually similar to the present case. The First District Court of Appeal found that

> DCF failed to establish that TPR, as opposed to some other arrangement, is the least restrictive means of protecting the children from harm. This conclusion is based on the testimony that it was safe for the children to have supervised contact with Appellant, as well as the GAL's own assessment that TPR would not harm the children despite their bond with Appellant, because the prospective adoptive aunt would allow such contact. In other words, the State took the position that it was the children's continued (albeit supervised) contact with Appellant that would avoid the harm resulting from TPR— making TPR incongruous with the least-restrictive means analysis, which seeks to prevent, to the extent possible, harm to the children.

*Id.* at 43 n.1 (emphasis omitted). We think *C.D.*'s interpretation of the least restrictive means test is contrary to *Padgett*. The test is not whether, under controlled circumstances, a parent can have contact with the child and develop an emotional bond, but whether a mother or father can be a *parent* to the child, with all of the responsibility and care that entails. If reunification is not possible because the father or mother cannot or will not assume responsibility as a parent to the child, as demonstrated, for example, by the repeated failure to comply with a case plan, then termination is the least restrictive means of preventing harm.

The mother raises two other issues which we find without merit. First, the mother challenges the court's adoption of the proposed final judgment prepared by DCF as contrary to *Perlow v. Berg-Perlow*, 875 So. 2d 383 (Fla. 2004). We disagree, as the court requested proposed final orders from both sides and provided each with sufficient time to object to the submission. *See Hillier v. City of Plantation,* 935 So. 2d 105, 107 (Fla. 4th DCA 2006); *Ross v. Botha*, 867 So. 2d 567, 572-73 (Fla. 4th DCA 2004). Second, we find no abuse of discretion in the admission of the psychologist's testimony over the mother's objections.

We thus affirm the final judgment of termination. Because under nearly identical factual circumstances, the First District held that the least restrictive means test was not met, we certify conflict with *C.D.*

TAYLOR and FORST, JJ., concur.

*       *       *

*Not final until disposition of timely filed motion for rehearing.*