**GUARDIAN AD LITEM PROGRAM O/B/O A.E. and L.E. Children, Appellant,**

v.

**DEPARTMENT OF CHILDREN AND FAMILIES, B.B., Mother and J.E., Father, Appellees.**

Case No. 5D16–3380

District Court of Appeal of Florida, Fifth District.

Opinion filed December 30, 2016

Susan King and Wendie Michelle Cooper, Appellate Counsel, Guardian ad Litem Program, Sanford, for Appellant.

Shannon L. Reynolds, Ocala, for Appellee, Mother.

Brenda H. Smith, Umatilla, for Appellee, Father.

WALLIS, J.

The Guardian ad Litem Program O/B/O A.E. and L.E., children ("GAL"), appeals the trial court's order denying the petition for termination of parental rights ("TPR")

of B.B. ("Mother") and J.E. ("Father") (collectively, "Parents").[1] Because the trial court improperly found that termination was not the least restrictive means of protecting A.E. and L.E. from harm, we reverse and remand for entry of TPR and a case plan for adoption.

## FACTS

In March 2015, DCF filed a petition to shelter A.E. and L.E.—twins born March 20, 2014—as well as Parents' three other children, born 2007, 2008, and 2013, respectively. The petition alleged that, on March 20, 2015, a Marion County Sherriff's Deputy responded to Parents' home and, with Father's consent to search, discovered an active methamphetamine lab in an attached shed, creating a lethal home environment for the children. At the time, Mother was incarcerated on unrelated drug charges, but was released shortly thereafter; Father was subsequently incarcerated. The trial court granted shelter and placed A.E. and L.E. in DCF custody and the three older children with their paternal grandparents.[2] In April 2016, DCF filed a petition to terminate Parents' rights as to A.E. and L.E., arguing for termination based on the following grounds: Parents' abandonment of A.E. and L.E.; Mother's failure to substantially comply with her case plans; the threat to the children's well-being caused by their relationship with Parents; Father's incarceration; the potential harm a continued relationship with Father would cause; and Father's egregious conduct.

At the August 15, 2016 hearing on the TPR petition, witness testimony established Mother's admitted history of drug use and multiple failed drug tests. The

1. The Department of Children and Families ("DCF") neither joined as an appellant nor participated as an appellee.

2. In March 2016, the trial court entered an order placing the three older children in permanent guardianship with their paternal grandparents.

trial court received evidence that Mother's drug use resulted in two violations of probation and unsuccessful discharges from substance abuse treatment programs. Mother's most recent probationary period began June 26, 2016. At the time of the August 15 hearing, Mother had complied with the probation requirements. However, she had ten required parenting classes and twenty required substance abuse treatment sessions remaining.

Parents' Family Care Manager testified to the Mother being incarcerated from March 2015 to May 2015, August 2015 to September 2015, and May 2016 to June 2016. The Family Care Manager provided additional testimony that Mother had a history of failing to maintain regular contact with him and not submitting to random drug screenings. The only fact establishing Mother's progress on her case plan was that of her limited compliance in the few weeks preceding the August 15 hearing.

After the hearing, the trial court entered an order finding that DCF established, by clear and convincing evidence, that Mother continues to abuse, neglect, or abandon A.E. and L.E., serving as grounds for TPR under section 39.806(1)(e), Florida Statutes (2016). The order detailed Mother's failure to substantially comply with her case plans and her continued use of illegal drugs, finding that "the circumstances which caused the creation of the case plan" have not been significantly remedied, and the children may be endangered upon their return to Mother.

As to Father, the trial court found that DCF established, by clear and convincing evidence, that his incarceration warranted TPR under section 39.806(1)(d)(1), Florida Statutes (2016). The trial court cited the significant length and timing of Father's

incarceration,[3] and the resulting bond developed between A.E. and L.E. and their foster parents.

Regarding the children's thriving relationship with their foster parents, the order stated: "To require the children to wait another three to three and a half years to be reunited with their father, would deprive them of this continuing and favorable placement with their foster family and would prevent them from achieving a permanent and stable home." The trial court further found, on clear and convincing evidence, "that the children are currently at substantial risk of harm if reunified with the parents at this time" and "it is in the manifest best interests of the children for parental rights of the parents to be terminated."

Despite articulating a strong basis for termination supported by clear and convincing evidence, the trial court declined to terminate parental rights, based on its findings regarding its "least restrictive means" analysis:

> Missing from the proof, however, was any proof that a measure short of termination, such as an extension of the case plan tasks for the mother, would not be equally as safe for the children. There is competent and substantial evidence of a commitment to change by the mother since June 2016, and to now complete her case plan tasks. Therefore, pursuant to section 39.811 (1)(a)(1), Florida Statutes, this Court, as outlined below, will re-adjudicate the children as dependent, and continue the children in out of home care under an extended six month case plan.
>
> .... [T]he purpose of TPR is to allow the children a chance to be adopted, and given the fact that the mother's parental

---

**3.** Father's expected release date is either January 2020 or, with possible gain time, as early as July 2019.

rights are not being terminated at this time, these children cannot be adopted, even if the father's rights are terminated. While the court acknowledges that section 39.811(6)(e), Florida Statutes, allows the Court to terminate the rights of one parent and not the other in this situation, the Court declines to exercise such discretion at this time.

### LAW & ANALYSIS

Generally, "[o]ur standard of review in a termination of parental rights case is highly deferential." In re Adoption of K.A.G., 152 So.3d 1271, 1274 (Fla. 5th DCA 2014) (citation omitted). "However, an appellate court is not required to defer to the trial court where there is no theory or principle of law that would support the trial court's conclusions of law concerning its least restrictive means findings." Statewide Guardian ad Litem Program v. A.A., 171 So.3d 174, 177 (Fla. 5th DCA 2015) (citing In re Baby E.A.W., 658 So.2d 961, 967 (Fla. 1995)). We review the trial court's interpretation of law de novo. Id.

To establish that termination is the least restrictive means of protecting a child from serious harm, DCF "ordinarily must show that it has made a good faith effort to rehabilitate the parent and reunite the family, such as through a current performance agreement or other such plan for the present child." Padgett v. Dep't of Health & Rehab. Servs., 577 So.2d 565, 571 (Fla. 1991). "[T]his prong is generally satisfied by DCF offering the parent a case plan and providing the parent with the help and services necessary to complete the case plan." S.M. v. Fla. Dep't of Children & Families, 202 So.3d 769, 778 (Fla. 2016). "In spite of the name, 'least restrictive means' does not mean that no alternative to termination of parental rights is conceivable by a court." J.P. v. Fla. Dep't of Children & Families, 183 So.3d 1198, 1204–05 (Fla. 1st DCA 2016) (citation omitted). Importantly, the test "is not intended

to preserve a parental bond at the cost of a child's future." Department of Children and Families v. B.B., 824 So.2d 1000, 1009 (Fla. 5th DCA 2002).

Recently, the Florida Supreme Court approved of and adopted the following language from the Fourth District Court's opinion below, which "more faithfully articulates the appropriate considerations to be taken into account" than the First District Court's conflicting case:

> The test is not whether, under controlled circumstances, a parent can have contact with the child and develop an emotional bond, but whether a mother or father can be a parent to the child, with all of the responsibility and care that entails. If reunification is not possible because the father or mother cannot or will not assume responsibility as a parent to the child, as demonstrated, for example, by the repeated failure to comply with a case plan, then termination is the least restrictive means of preventing harm.

S.M., 202 So.3d at 780 (quoting S.M. v. Dep't of Children & Families, 190 So.3d 125, 129 (Fla. 4th DCA 2015)). The Florida Supreme Court explained that the Fourth District Court "properly puts the focus on the State's actions prior to filing the termination of parental rights petition, rather than on the consideration of what remains of the bond between parent and child." Id. The court further emphasized that this interpretation "appropriately considers the process due and the parental right being terminated—the right to be a parent to one's child." Id.

Applying these principles, the Florida Supreme Court found that the presence of "any emotional bond between the parent and child" and "another permanency option, such as guardianship, that would protect the child from harm" did not overcome express findings that failure to

complete a case plan and a history of controlled substance abuse warranted termination in the manifest best interests of the children. Id. at 784. Similar to our case, the court in S.M. noted that "DCF made good faith efforts over a four-year period to work toward reunification by offering the mother three case plans," but, "[i]n the two years following her children's removal, [the mother] never passed a drug screening, nor did she successfully complete any drug treatment program." Id. Based on these facts, the court found that DCF had "more than satisfied its burden under the least restrictive means test." Id.; see also J.E. v. Dep't of Children & Families, 126 So.3d 424, 429–30 (Fla. 4th DCA 2013) (finding that DCF established that termination of the father's parental rights was the least restrictive means to protect the child from harm where, despite DCF's efforts, the father failed to comply with two consecutive case plans).

In a similar case from our court, the trial court noted the mother's failure to complete case plan tasks, continued drug use, and inability to maintain continuous sobriety. A.A., 171 So.3d at 177. In A.A., the trial court declined to terminate parental rights after finding a likelihood of prospective abuse and neglect, the suitability and stability of the children's current placement, and that "reunification of the children with Mother was not in their best interest." Id. at 176–77. The trial court in A.A. based its refusal on the mother's minimal efforts to curtail her drug use and the likelihood that she would respond to treatment, explaining that "it could not conclude that a less restrictive alternative 'could not ameliorate the risk to the children.'" Id. at 177. In reversing, our court held:

> The trial court erred by shifting its focus away from the children's best interests and onto the interests of Mother.... The trial court's denial of the petition and change of case plan goal to permanent guardianship denied the children the permanency and stability of adoption. Doing so under the circumstances of this case prioritized tenuous parental contact over the children's right to permanency, in direct conflict with section 39.621.

Id. at 178. Accordingly, our court reversed and remanded "for entry of an amended final judgment terminating Mother and Father's parental rights that also establishes adoption as the case plan goal." Id.

■ Here, the trial court's order recognized that DCF had worked with Mother on several case plans, with which she repeatedly failed to comply. This finding alone satisfies the least restrictive means prong. See S.M., 202 So.3d at 778. Although the trial court should have focused exclusively on DCF's actions prior to filing its petition to ensure that it had afforded Mother due process before attempting to terminate her parental rights, see id., it improperly looked beyond the date of the petition to the future possibility that, with an additional six months, Mother may finally improve and work towards reunification.

The trial court cited to Mother's renewed attempts at employment and enrollment in substance abuse treatment in the weeks immediately preceding the August 15 hearing as grounds for the denial. The Fourth District Court has addressed such a scenario:

> The father's belated attempts to become a good father amount to too little too late in terms of the least restrictive means test. The child's interests are paramount over the father's desire to now parent his child, where the child would have to remain in foster care for a substantial period of time to effectuate a reunion without harming the child further.

J.C. v. K.K., 64 So.3d 157, 163–64 (Fla. 4th DCA 2011). Similar to the father in J.C., Mother's attempts are likewise "too little too late," as she had ample opportunity to comply before the filing of the TPR petition. See id. Additionally, one of the purposes of chapter 39 is "[t]o ensure that permanent placement with the biological or adoptive family is achieved as soon as possible for every child in foster care and that no child remains in foster care longer than 1 year." § 39.001(h), Fla. Stat. (2016). Allowing Mother more time to work on her rehabilitation and case plan, although generous, would add to the children's time in shelter without permanent placement, which already exceeds one year. Just as the trial court did in A.A., 171 So.3d at 178, the trial court here shifted its focus away from A.E. and L.E.'s best interests by excusing Mother's continued failure to comply with her case plan and ignoring the foster parents' desire to adopt, while elevating Mother's minimal efforts immediately prior to the termination hearing as proof of sufficient compliance.

Because the trial court's decision with regard to Father was contingent upon its decision on Mother's rights, reversal as to Mother eliminates the only basis provided by the trial court for declining to terminate Father's rights.[4] Additionally, a proper consideration of the least restrictive means prong further demonstrates the trial court's error with regard to Father. "Where there is a lack of a meaningful relationship between a parent and a child, caused in large part by the parent's criminal propensities, this Court has previously concluded that termination of parental rights is not barred by application of the least restrictive means test." J.H. v. Dep't of Children & Families, 161 So.3d 499, 499 (Fla. 5th DCA 2014) (citations omitted). The Fourth District Court affirmed a TPR where a father "was prevented from completing a case plan or from participating more in his child's life due to his incarceration," explaining: "Nevertheless, if the focus is on the child, and not the parent, where the child has bonded with her caregivers, termination of parental rights is the least restrictive means of protecting the child from the harm of continued instability in her life." B.K. v. Dep't of Children & Families, 166 So.3d 866, 877 (Fla. 4th DCA 2015).

Here, Father's drug manufacture and use exposed his children to a substantial risk of harm and resulted in a term of incarceration that all but erased any relationship he had with A.E. and L.E. The trial court recognized these facts and emphasized that A.E. and L.E. had since bonded with their foster parents and were now thriving. Thus, because Father's criminal propensities and term of incarceration resulted in the lack of a meaningful relationship with A.E. and L.E., the least restrictive means prong should not bar termination of his parental rights. See J.H., 161 So.3d at 499; B.K., 166 So.3d at 877. In light of these several errors, we reverse and remand for entry of an amended final judgment terminating Mother and Father's parental rights as to A.E. and L.E. and establishing adoption as the case plan goal. See A.A., 171 So.3d at 178.

REVERSED and REMANDED with instructions.

ORFINGER and BERGER, JJ., concur.

---

4. The trial court declined to terminate Father's parental rights despite its acknowledgement that it could do so without terminating the rights of Mother "[i]f the parent whose rights are being terminated meets any of the criteria specified in s. 39.806(1)(d) and (f)-(m)." § 39.811(6)(e), Fla. Stat. (2016).