# Third District Court of Appeal

## State of Florida

Opinion filed August 7, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-2245
Lower Tribunal No. 19-15361
_____

**Department of Children and Families, et al.,**
Appellants/Cross-Appellees,

vs.

**L.W., the Mother,**
Appellee/Cross-Appellant.

An Appeal from the Circuit Court for Miami-Dade County, Scott M. Bernstein, Judge.

Karla Perkins, for appellant/cross-appellee the Department of Children & Families; Sara Elizabeth Goldfarb, Statewide Director of Appeals, and Laura J. Lee, Assistant Director of Appeals (Tallahassee), for appellant/cross-appellee the Statewide Guardian ad Litem Office.

Eugene F. Zenobi, Criminal Conflict and Civil Regional Counsel, Third Region, and Kevin Coyle Colbert, Assistant Regional Counsel, for appellee/cross-appellant.

Before EMAS, GORDO and LOBREE, JJ.

LOBREE, J.

Florida Department of Children and Families (the "Department") and the Statewide Guardian ad Litem Office ("GAL") appeal, and L.W. (the "Mother"), cross-appeals from the Final Judgment Denying Termination of the Mother's Parental Rights and Disposition ("final judgment"), rendered on November 21, 2023. We reverse and remand for entry of a final judgment terminating the Mother's parental rights.

## BACKGROUND

The Mother's history with the Department dates back to August 2019. The Department petitioned to have A.W., who was born in November 2018, adjudicated dependent as to the Mother when the Mother, who was homeless at the time, was found intoxicated wandering the streets with A.W., who was then eight months old. The Mother received services pursuant to several case plans, including treatments at both inpatient and outpatient substance abuse programs. While the dependency action was pending, the Mother gave birth to A.W.Z. in late August 2022, but A.W.Z. was never adjudicated dependent. Despite the Mother relapsing several times, the Mother was eventually reunified with A.W. in November 2022, when the trial court entered an order terminating protective supervision.

On March 27, 2023, law enforcement found the Mother extremely

intoxicated at a laundromat while alone with A.W., resulting in the Mother being Baker Acted. Based on this incident, on April 17, 2023, the Department filed an Expedited Petition for Termination of Parental Rights ("expedited petition"), which is the subject of this appeal, seeking to terminate the Mother's parental rights as to both A.W.[1] and A.W.Z.[2] In the expedited petition, the Department asserted two statutory grounds for termination of her parental rights, (1) section 39.806(1)(c), Florida Statutes (2022) (irrespective of the provision of services), and (2) section 39.806(1)(j), Florida Statutes (2022) (chronic substance abuse), and alleged that termination is in the manifest best interest of the children and the least restrictive means to protect the children from harm.

The trial court heard testimony from the Mother, the maternal grandmother, A.W.Z.'s father, the Mother's substance abuse counselors, the children's guardian ad litem, and others. Following the hearing, the trial court entered the final judgment, denying termination of the Mother's parental rights. In doing so, the trial court found by clear and convincing evidence that (1) the Department established the two statutory grounds; (2) "it is in the

---

[1] The petition also sought termination of A.W.'s father's parental rights based on abandonment. His parental rights were terminated in August 2023. He did not appeal the termination of his parental rights.

[2] This petition did not seek termination of A.W.Z.'s father's parental rights.

3

manifest best interest of the children that they are *never placed in the mother's custody,*" and there are suitable permanent custody arrangements with relatives—A.W. with her maternal grandmother and then with her maternal aunt, and A.W.Z. with her father; and (3) the Department failed to establish that terminating the Mother's parental rights is the least restrictive means of protecting the children from harm. (emphasis added).

The introductory paragraph of the final judgment denying termination of the Mother's parental rights provides as follows:

> [The Mother] is a chronic alcoholic and substance abuser. She participated in at least six in-patient substance abuse programs and multiple out-patient programs. Despite all these programs, she failed to maintain her sobriety. *She is not capable of raising her children; she likely never will.* The defense argued that this case is merely about a single relapse. Nothing could be further from the truth. The [M]other has a 20-year history of relapses, lies, and manipulations, which continue to this day.

(emphasis added).

In addressing the statutory ground set forth in section 39.806(1)(c), the trial court made detailed findings pertaining to the Mother's twenty-year substance abuse history; the six inpatient treatment programs she attended, with the first one dating back to 2007, and the numerous outpatient programs attended by the Mother; and the history of the Mother's relapses, including relapses that occurred within days of the Mother being reunified with A.W. in November 2022.

4

As to the post-reunification incidents, the trial court found that on two separate occasions, A.W.Z.'s father found the Mother either incoherent or unresponsive while the children were in her sole care, and in one of those incidents, A.W.Z. was in a swing and was not wearing a diaper. A third incident occurred while A.W.Z.'s father was at home with the Mother. She began to convulse, despite seeming to be awake, and she could not answer questions. He found Benadryl next to the Mother and small bottles of alcohol behind the bed. The fourth incident occurred on March 27, 2023, when the Mother drove with the children in her vehicle while intoxicated. The vehicle showed signs of damage that were not present prior to that date. Later that day, law enforcement found the Mother intoxicated at a laundromat with A.W., and the Mother was Baker Acted. In addition, the trial court acknowledged that following this fourth incident, the Mother entered an inpatient treatment program. However, the Mother was unsuccessfully discharged because she failed to comply with the program requirements and the facility's rules.

Based on these facts, the trial court found "by clear and convincing evidence that the [M]other has engaged in conduct toward the children that demonstrates that *the continuing involvement of the [Mother] in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or*

5

*emotional health of the children irrespective of the provision of services*. §
39.806(1)(c), Fla. Stat. (2022)." (emphasis added).  The trial court also found
that "[n]ot only has the [M]other been dishonest with the Court, she was also
dishonest with her substance abuse counselors" by hiding her substance
abuse from her counselors.  Finally, as to this ground, the trial court found:
"*There is no reasonable basis to believe the [M]other will ever rehabilitate
herself, despite the provision of services*." (emphasis added).

Next, the trial court addressed the statutory ground under section
39.806(1)(j).  The trial court found that "by clear and convincing evidence
that the [M]other has a history of extensive, abusive, and chronic use of
alcohol or controlled substances which render her *incapable of caring for the
children* and has refused or failed to complete available treatment for such
use during the 3-year period immediately preceding the filing of the petition
for the termination of parental rights.  § 39.806(1)(j), Fla. Stat. (2022)."
(emphasis added). The trial court noted that the Mother participated in
several inpatient and outpatient treatment programs in the last three years.
However, during the programs she was not committed to her recovery; "[s]he
manipulates, lies and breaks the rules"; and she failed to maintain sobriety.

As to the "manifest best interests" prong of the termination of parental
rights test, the trial court found that by clear and convincing evidence, "it is

6

in the manifest best interest of the children that they are *never* placed in the Mother's custody." (emphasis added). In making this determination, the trial court addressed the factors set forth in section 39.810, Florida Statutes (2022). The trial court acknowledged that the Mother has a bond with the children, and that "[t]here may be some degree of harm to the children if the [M]other's parental rights are terminated." See § 39.810(5), Fla. Stat. However, the children also have significant bonds with their current caregivers, and A.W. has a growing bond with her maternal aunt.

Finally, the trial court addressed the third prong of termination of parental rights test—"least restrictive means." The trial court found that, even though the Department established the grounds for termination by clear and convincing evidence, the Department did not prove that termination of the Mother's parental rights is the least restrictive means of protecting the children from harm. In making this determination, the trial court rejected the Mother's expert's testimony that the Mother is amenable to treatment; found that provision of additional services to the Mother is futile; and determined that the Department proved that there is no reasonable basis to believe that the Mother will improve.

The trial court then fashioned its own arrangement to provide for the "least restrictive means" of protecting the children from harm. The trial court

7

recommended that A.W.Z.'s father file "a petition in the Family Division pursuant to Chapters 742 and 51, Florida Statutes, seeking sole parental responsibility and 100% timesharing, and request only supervised timesharing for the [M]other by an outside provider." Similarly, as to A.W., the trial court recommended that A.W.'s maternal aunt "file a petition in the Family Division pursuant to Chapter 751, Florida Statutes, seeking custody by an extended family member which would provide her sole parental responsibility and 100% timesharing, and request only supervised timesharing for the [M]other by an outside provider." The trial court noted that these "arrangement[s] could ensure the safety of the child[ren], who would never be left alone with the [M]other, but would still allow the child[ren] to still have some contact with the [M]other. This is a less restrictive means of protecting the child, short of termination of the [M]other's parental rights."

Based on the above, the trial court denied the petition for termination of the Mother's parental rights; adjudicated the children dependent; committed A.W. to the custody of the Department pending the aunt's petition for custody pursuant to Chapter 751, Florida Statutes; and committed A.W.Z. to the custody of the Department pending her father's petition for custody pursuant to Chapters 742 and 61, Florida Statutes. The trial court denied the Department's motion for rehearing. The Department's and GAL's

8

appeal, and the Mother's cross-appeal, followed.

## STANDARD OF REVIEW

In termination of parental right cases, appellate courts "afford great deference to the trial court's findings of fact and review the record to determine whether the trial court's order is supported by competent, substantial evidence." A.P. v. Dep't of Child. & Fams., 49 Fla. L. Weekly D1137, 2024 WL 2743709, at *1 (Fla. 3d DCA May 29, 2024). "While the trial court must find that the evidence is clear and convincing, [an appellate court's] review is limited to whether competent, substantial evidence supports the trial court's final judgment, and whether the appellate court 'cannot say that no one could reasonably find such evidence to be clear and convincing.'" J.P. v. Fla. Dep't of Child. & Fams., 183 So. 3d 1198, 1203 (Fla. 1st DCA 2016) (quoting N.L. v. Dep't of Child. & Fam. Servs., 843 So. 2d 996, 1000 (Fla. 1st DCA 2003)). "However, an appellate court is not required to defer to the trial court where there is no theory or principle of law that would support the trial court's conclusions of law concerning its least restrictive means findings." Guardian ad Litem Program v. Dep't of Child. & Fams., 207 So. 3d 1000, 1003 (Fla. 5th DCA 2016) (quoting Statewide Guardian ad Litem Program v. A.A., 171 So. 3d 174, 177 (Fla. 5th DCA 2015)). "[A] finding that evidence is clear and convincing enjoys a

9

presumption of correctness and will not be overturned on appeal unless clearly erroneous or lacking in evidentiary support." J.E. v. Dep't of Child. & Fams., 126 So. 3d 424, 427 (Fla. 4th DCA 2013) (quoting D.P. v. Dep't of Child. & Fam. Servs., 930 So. 2d 798, 801 (Fla. 3d DCA 2006)). "An appellate court may reverse the trial court's order denying a petition to terminate parental rights when the denial is not supported by competent[,] substantial evidence and is not in the best interests of the children." In re E.R., 49 So. 3d 846, 851 (Fla. 2d DCA 2010) (quoting H.D. v. J.L.D., 16 So. 3d 334, 335 (Fla. 4th DCA 2009)).

## ANALYSIS

Before a court can terminate parental rights, it must find that the Department established the following by clear and convincing evidence: "(1) the existence of at least one statutory ground for terminating parental rights set forth in section 39.806(1); (2) termination is in the manifest best interest of the child; and (3) termination is the least restrictive means to protect the child from serious harm." D.M. v. Dep't of Child. & Fams., 315 So. 3d 90, 93 (Fla. 3d DCA 2020) (quoting L.Q. v. Dep't of Child. & Fams., 282 So. 3d 958, 962 (Fla. 3d DCA 2019)).

### I. *Statutory Grounds*

The Mother challenges on cross-appeal the trial court's finding that the

10

Department established by clear and convincing evidence the statutory grounds set forth in section 39.806(1)(c) and (1)(j). We affirm this determination as it is supported by competent, substantial evidence in the record. In doing so, we address only one issue raised by the Mother relating to section 39.806(1)(c), as the remaining arguments as to the statutory grounds do not merit discussion.

The Mother asserts the trial court erred by rejecting her expert's unrebutted testimony that there was a reasonable basis to conclude that the Mother would benefit from additional services, without providing a rational basis for rejecting her expert's testimony. This argument is not supported by the record.

To terminate the Mother's parental rights under section 39.806(1)(c), the Department was required "to prove, and the trial court must find, by clear and convincing evidence, that 1) the parent's continued involvement threatens the life, safety, well-being, or physical, mental, or emotional health of the child, irrespective of services, and 2) there is no reasonable basis to believe the parent will improve." A.P., 49 Fla. L. Weekly D1137, 2024 WL 2743709, at *2 (cleaned up). "Termination under this section is termination based on *prospective* abuse or neglect. Essentially, the trial court is asked to look at the parent's *current medical condition or past behavior* and predict

11

whether the parent will likely harm the child in the future." Q.L. v. Dep't of Child. & Fams., 280 So. 3d 107, 113–14 (Fla. 4th DCA 2019).

Here, the Mother's expert, a board-certified family physician and addiction specialist, testified that, in his opinion, a relapse does not mean it is futile for a patient to engage in treatment, and testified that the Mother was amenable to services. On cross-examination, however, the Mother's expert acknowledged that in his report, he stated that the Mother maintained sobriety for two years and relapsed only once in March 2023. He testified that he knew the Mother actually relapsed five or six times but decided to exclude these other relapses because he did not have the details surrounding them. He further acknowledged that he did not know that the children were in the Mother's care when she had those relapses, or that the Mother had driven with the children in the car while intoxicated, left them unsupervised while intoxicated, and left A.W.Z. without clothing while intoxicated. The Mother's expert was then asked what is the likelihood that the Mother will refrain from relapsing given her history, and he testified as follows:

> A. . . . The likelihood of relapse is less and less when she is being treated properly. And is compliant with her disease as it presents.

12

She had[3] a severe alcohol disorder.  She needs more intense treatment like intensive care and stationary care in a hospital. She needs to be in intensive care.

Q.  And it is your opinion that the care that she has received prior to the treatment that she is receiving now has not been adequate?

A.  It's not a matter of adequacy.  But trial and error.  How often do you need to do it.  Individualize the treatment.  Consider medication assisted treatment.  Considering corporation [sic] of other treatment specialist in the team.

It's a very complex approach. . . .

Q.  So it is fair to say that you cannot predict with any certainty that – that she will not continue to relapse once she is out of treatment?

A.  The probability of relapse is always there.  But if you treat a patient appropriately and monitoring him or her properly, the likelihood that the relapse is less and less. . . .

First, the trial court did not reject the expert's testimony that the Mother was "amendable to treatment" without indicating its reasoning.  In the final judgment, immediately after rejecting the expert's opinion that the Mother is amenable to treatment and that the provision of treatment is not futile, the trial court explained: "The [M]other continues to manipulate and lie to treatment providers, right up to the date of trial."  The Mother's expert's testimony reflects that the Mother was not completely forthcoming when detailing the extent of her relapses, including that the children were in her

---

3 Although the Mother's expert testified that the Mother "had" a severe alcohol disorder, unrebutted testimony reflects that she still *has* a severe alcohol disorder.

sole care when she suffered several relapses and that she chose to drive with the children in the vehicle while intoxicated.

Moreover, the record reflects that the Mother's latest relapses occurred despite her participation in six in-patient treatment programs, several out-patient treatment programs, and other services. The Mother's expert testified that treatment is a matter of "trial and error." Based on the substantial history of "trial and error" in this case, the trial court permissibly looked at the Mother's past behavior—lying, breaking rules at treatment facilities, relapses, etc.—when finding that "[t]here is no reasonable basis to believe the [M]other will ever rehabilitate herself, despite the provision of services." This finding is supported by competent, substantial evidence. Therefore, we reject the cross-appeal and affirm the trial court's determination that the Department proved "by clear and convincing evidence that the [M]other has engaged in conduct toward the children that demonstrates that the continuing involvement of the parent in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the children irrespective of the provision of services. § 39.806(1)(c), Fla. Stat. (2022)."

II. *Least Restrictive Means*

The Department and GAL challenge the trial court's determination that

14

the Department failed to establish by clear and convincing evidence that termination is the least restrictive means to protect the children from serious harm. Because the Department met its burden at trial, we reverse this portion of the final judgment and remand for entry of a final judgment terminating the Mother's parental rights.

In Padgett v. Department of Health & Rehabilitative Services, 577 So. 2d 565, 570 (Fla. 1991), the Florida Supreme Court recognized that parental rights constitute a fundamental liberty interest. "[T]he only limitation on this rule of parental privilege is that as between the parent and the child the ultimate welfare of the child itself must be controlling." Id. at 570 (quoting State ex rel. Sparks v. Reeves, 97 So. 2d 18, 20 (Fla. 1957)). As such, "because parental rights constitute a fundamental liberty interest, the state must establish in each case that termination of those rights is the least restrictive means of protecting the child from serious harm." Padgett, 577 So. 2d at 571. The Department "ordinarily must show that it has made a good faith effort to rehabilitate the parent and reunite the family, such as through a current performance agreement or other such plan for the present child."[4] Id.

---

[4] In Guardian ad Litem Program v. K.H., 276 So. 3d 897, 903 (Fla. 3d DCA 2019), this Court recognized that the Department does not have to offer a case plan prior to terminating a parent's parental rights, where doing so

In <u>S.M. v. Florida Department of Children & Families</u>, 202 So. 3d 769 (Fla. 2016), the Florida Supreme Court once again addressed the "least restrictive means" prong.  In doing so, the Court recognized that "the focus of the 'least restrictive means' prong is whether the parent has the ability to be a parent to the child with all of the responsibilities that it entails and 'not merely to be an occasional presence in the life of the child.'"  <u>Id.</u> at 772 (quoting <u>S.M. v. Fla. Dep't of Child. & Fams.</u>, 190 So. 3d 125, 128 (Fla. 4th DCA 2015)).  Further, the Court noted that the Fourth District's opinion in <u>S.M.</u> "more faithfully articulates the appropriate considerations to be taken into account when analyzing the least restrictive means prong of the termination of parental rights test":

> The test is not whether, under controlled circumstances, a parent can have contact with the child and develop an emotional bond, but whether a mother or father can be a parent to the child, with all of the responsibility and care that entails.  If reunification is not possible because the father or mother cannot or will not assume responsibility as a parent to the child, as demonstrated, for example, by the repeated failure to comply with a case plan, then termination is the least restrictive means of preventing harm.

<u>S.M.</u>, 202 So. 3d at 780 (quoting <u>S.M.</u>, 190 So. 3d at 129).  Moreover, the

---

would be futile.  <u>See also</u> <u>In re T.M.</u>, 641 So. 2d 410, 413 (Fla. 1994) (recognizing that under certain "extraordinary circumstances . . . the termination of parental rights without the use of plans or agreements is the least restrictive means").

Court noted that this "interpretation of the least restrictive means prong properly puts the focus on the State's actions prior to filing the termination of parental rights petition, rather than on the consideration of what remains of the bond between parent and child." S.M., 202 So. 3d at 780. The Court also noted that the Fourth District's interpretation is "more consistent with the Legislature's permanency goals in dependency cases" set forth in section 39.621(3), Florida Statutes. Id. at 781.

The Florida Supreme Court also rejected S.M.'s argument that if there is "'some other arrangement,' as opposed to termination of rights and adoption," that arrangement "should be the preferred permanency goal." Id. at 782. In rejecting this argument, the Court explained that the argument "shift[s] the focus of the termination of rights hearing away from the best interests of the child to the parent's interest in preserving the parent-child bond." Id. The Court further stated:

> The "right" of a parent to a bond with the child is important, but ultimately the health, welfare, and safety of the child must be paramount. Being a parent requires parental obligations to care for the child, specifically to ensure the child's life, safety, well-being, and physical, mental, and emotional health.

Id.

With these principles in mind, we conclude that the trial court's determination, that the Department failed to establish by clear and

17

convincing evidence that termination is the least restrictive means of protecting the children from serious harm, is not supported by competent, substantial evidence. As recognized in S.M., "the focus of the 'least restrictive means' prong is whether the parent has the ability to be a parent to the child with all of the responsibilities that it entails and 'not merely to be an occasional presence in the life of the child.'" S.M., 202 So. 3d at 772 (quoting S.M., 190 So. 3d at 128).

Here, in the Mother's prior dependency action, the Department provided the Mother with substantial services, and she was ultimately reunified with A.W., despite having several relapses. However, within days of not being under the Department's watchful eye, the Mother relapsed numerous times, thereby continuing her twenty-year history of chronic substance abuse despite six inpatient treatment programs, various outpatient treatment programs, and other services. These relapses put the children at risk.

In its final judgment, the trial court made explicit findings of fact indicating that its determination as to "least restrictive means" is not supported by the evidence. For example, the trial court stated, (1) "[The Mother] is not capable of raising her children; she likely never will."; (2) "There is no reasonable basis to believe the [M]other will ever rehabilitate

18

herself, despite the provision of services."; (3) "She is not committed to her recovery."; and (4) "[The Department] proved that the provision of additional services to the [M]other is futile." Based on the explicit findings, which are supported by competent, substantial evidence, the Mother does not have "the ability to be a parent to the child[ren] with all of the responsibilities that it entails and 'not merely to be an occasional presence in the life of the child[ren].'" S.M., 202 So. 3d at 772 (quoting S.M., 190 So. 3d at 128).

Finally, at the hearing on the expedited petition, the children's guardian ad litem testified that although the Mother is not likely to physically harm the children, she recommended termination of the Mother's parental bond. In doing so, the children's guardian ad litem testified as follows:

> Q. And can you explain to the Court why, even with respect to the fact that [the Mother] has a bond with the children, why do you still recommend [termination of parental rights]?
> A. Both the emotional, safety and physical well[-]being of the children. I mean since this case came in it has already happened once. And I am not talking about one relapse. I am talking about a very small[,] sustained period, of where [the Mother] wasn't able to maintain her sobriety and not *put the children at risk emotionally and physically*.
> You know not that she would ever hurt the children physically. She loves these kids, and she wants the best. But she is just dominated by this disease. *And I do feel that it puts the children at risk, despite her bond*. Of course she loves them.

(emphasis added).

Based on the record before this court, the trial court's determination

that termination of the Mother's parental rights is not the least restrictive means of protecting the children from serious harm is not supported by competent, substantial evidence. Accordingly, we reverse the portion of the final judgment denying termination of the Mother's parental rights and remand for entry of final judgment terminating the Mother's parental rights consistent with this opinion.

Affirmed in part; reversed in part; and remanded with directions.